# Leaver v. Buckingham Township Board of Adjustment

*I. J. VanArtsdalen* and *D. W. VanArtsdalen*, for appellants.

*William H. Satterthwaite* for zoning board of adjustment.

SATTERTHWAITE, J., November 16, 1956.—This appeal from a decision of a zoning board of adjustment involves a problem of construction of the terms of a zoning ordinance relative to the extent of permissible accessory uses. The facts have been stipulated and the case appears to be regularly before the court.

Appellants, J. Samuel Leaver and wife, are the equitable owners, as purchasers under an agreement of sale, of a vacant tract of land fronting 300 feet on the northwesterly side of York Road, or Route 202, and extending over 500 feet in depth, located in the Township of Buckingham, a second-class, rural township of this county. Upon these premises they desire to construct their residence and also, as an appurtenance thereto and in the same building, to provide facilities for the husband appellant's "funeral home" wherein

will be conducted the embalming and preparing of bodies for burial and the holding of funerals. They also propose to erect, as a part of the same structure, a three-car garage for their personal automobiles and for a funeral coach. Husband appellant is a duly licensed funeral director, and the application for a building and use permit in all respects, other than the questions hereinafter discussed, admittedly meets the requirements of law and the regulations of the township.

By a zoning ordinance duly enacted on November 24, 1951, the premises in question are located in a district classified as "Agricultural (A)". Among the permissible uses specified for such a district are those usually found in the residential provisions of most zoning ordinances, including single family detached residences, school, church and other public or municipal uses, facilities of public utilities, clubs and lodges, private educational, religious and philanthropic uses, including cemeteries. The authorized purposes are not, however, confined to those just mentioned, nor are they limited to residential and public or quasi-public objects. To the contrary, several different types of commercial or business activity are expressly approved. One is the agricultural or farm use to which large areas of the township are committed. Another is the roadside "stand" for the sale of farm or nursery products, the bulk of which are produced on the premises. A third group is included within the "accessory use" provisions of section 301(8) which authorize:

"Accessory use on the same lot with and customarily incidental to any of the foregoing permitted uses. The term 'accessory use' shall not include a business, but shall include: (a) private garage or stable, (b) professional office or studio, provided that such office or studio shall be located in a dwelling in which the petitioner resides, or in a building accessory thereto, (c)

not more than three (3) rental rooms for roomers or tourists, and (d) . . . (tenant house for farm tenants or employes). . . ."

Notwithstanding the lip-service paid in this language to the exclusion of business activity, the very next clause, section 301 (9) extends the concept of "accessory use" by authorizing a vague, undefined and only superficially limited type of commercial activity consisting of "home occupation, ordinarily conducted in conjunction with a home, in either the main or an accessory building", if carried on by a resident of the dwelling and subject to certain restrictions relating to area, absence of public display of goods visible from a road or street, and conformity in appearance of buildings to the "residence character" of the district, and provided further that sign regulations be observed and that the occupation not be "noxious or hazardous".

Because it was believed that the husband appellant would not be conducting a professional office or studio under section 301 (8) (*b*) above quoted, both the zoning officer and the board of adjustment, after due hearing on appeal, have denied the building and use permit, and appellants have duly appealed to this court. The reasoning of the board in arriving at its decision (or at least of the person, other than the township solicitor, who wrote the memorandum which the board adopted as its opinion) appears to have been two-fold: First, that since a "mortuary" is expressly provided for in a commercial district by the ordinance (a circumstance not present, it is alleged, in the Paxtang case hereinafter mentioned), the supervisors could not have intended to allow the same in more restricted areas; secondly, the term "professional office" relates only to "those professions in which the professional duties were performed in the office, and not such professions performing their real work in other parts of the build-

ing, the office being devoted to bookkeeping and the storage of records". In view of the ordinance as a whole, we cannot agree with either position.

The first argument is apparently based upon the discussion in the opinion of the Supreme Court in Bonasi v. Haverford Township Board of Adjustment, 382 Pa. 307, where the question was whether a beauty salon was permitted in a residential district under an accessory use clause similar to the one presently in question. The refusal of a permit was affirmed, the court holding that its function was to construe the language in question by giving effect to the legislative intention as evidenced by the whole ordinance. In ascertaining such intention, Justice Stearne referred to the fact that a clause defining some of the permitted uses in a business district expressly provided for: " 'Personal service shop, tailor, barber, beauty, shoe repair, dress making shop and other personal service shop or store.' " In such a context, it followed that a beauty shop, specifically mentioned in the same category with other enterprises which were undoubtedly commercial in nature, was intended to be a business use, and consequently, by exclusion, could not, for purposes of the ordinance, be a profession and would not be allowable in a residence district.

If the search for legislative intent follows the same pattern in the instant case, however, the result would be inconclusive. We are concerned with a proposed use in an agricultural district, not a residential one, and, although the accessory use clause here likewise purports to exclude business purposes, in fact the many types of commercial activity provided for in agricultural districts as above noted negative the desire to preserve the strictly residential or public character of the area, a situation inherently different from that presented in the Bonasi case. In that decision Justice

Stearne properly gave effect to the prohibition of business uses as stated in the accessory use clause, a contrary result being necessarily precluded because the operation of a beauty shop could not have been intended to be a profession in view of the enumeration of that occupation with other enterprises all of which were clearly not "professions". Similar conclusions, however, are not compelled under the provisions here in question.

Under section 601(3) of the Buckingham ordinance, it is true that authorized uses in a commercial district include a mortuary, as well as a retail store, a restaurant and a bank. The same clause, however, also includes an office and a personal service and craftsmen's shop. It is at once apparent, therefore, that the specifications of section 601(3), when considered with section 301(8) and (9), do not have the exclusive character of those involved in the business zone provisions referred to in the Bonasi case. The term "office" as so included would certainly embrace any "professional office", yet it could not be doubted but that a resident practitioner of one of the classic professions would be authorized to follow his calling in his house in an agricultural district. So, too, although a home seamstress would technically be conducting a personal service shop under section 601(3), that business would certainly be allowed as a home occupation under section 301(9). Even if it be assumed that the word "mortuary" expresses the same line of endeavor as a "funeral home" or "undertaking establishment", as to which there may be some doubt, it does not necessarily follow, as it did in the Bonasi case, that the authorization thereof in a business district with no residence requirement compels the exclusion thereof in an agricultural district if the additional requirement of residence be met, or that the context absolutely requires a holding that a funeral director is not a professional man.

Reference to section 601(3) simply does not provide assistance in deciding the latter point.

From an affirmative point of view. in deciding the case, we believe it to be one in which we are not controlled by any binding precedents. We have neither found nor been referred to any decision by an appellate court in Pennsylvania involving the instant problem. The research of counsel, and our own, discloses only three lower court cases on the subject. The first was Hampton v. Norristown Board of Adjustment, 72 D. & C. 270, decided in 1950, in which the application for a zoning permit was phrased by the undertaker himself to be for the conduct of a "business", and the fundamental question was whether or not a variance should be granted. Apparently as an afterthought, the argument was also made that the nature of such an enterprise would permit the use of the premises in a residential district under a provision authorizing "offices for professional persons". Judge Corson, speaking for the Montgomery County court, held that a variance had been improperly granted by the board and, without discussion and in reliance upon the applicant's own characterization of his activity and certain cases from other States, categorically ruled that the carrying on of an undertaking business was not a profession within the meaning of the ordinance.

The next was Paxtang Borough Board of Adjustment v. Arnold, 8 D. & C. 2d 98, decided in 1955, upon which appellants largely base their case. The language of the clause of the ordinance immediately in question was practically identical to that of the Buckingham ordinance in the instant case. The board of adjustment there also had refused a permit for a funeral home because it believed the conduct thereof was a business and not a profession; it further refused to grant a variance because of the absence of unnecessary hardship. On appeal, the Court of Common Pleas of

Dauphin County reversed on the former ground only, expressly stating that it was unnecessary to consider the variance question since undertaking was a profession under the dictionary definition of the latter term as quoted and applied by the Supreme Court in Howarth v. Gilman, 365 Pa. 50, 56-57, hereinafter referred to.

Judge Kreider in the Paxtang case also placed great reliance, as do appellants in the instant proceedings, upon the fact that the legislature in the Funeral Director Law of January 14, 1952 (1951 Sess.), P. L. 1898, 63 PS §479.1 et seq., had referred to undertaking as a profession, particularly in contrast to the prior legislation on the subject in the Undertaker's Act of June 10, 1931, P. L. 485, which had referred to it as a business or profession. We expressly disclaim any intention to base our decision in the within case on that ground because the statutory definition cannot have any retroactive effect as to an ordinance adopted prior thereto. Definitions of the legislature in a statute licensing and regulating undertakers in no sense can be controlling upon the courts in determining the intention expressed in a zoning ordinance adopted sometime earlier and no way related to or dependent upon such statute. In the very Howarth case relied upon in the Paxtang decision, the Supreme Court was careful to point out that whether or not the practice of the profession of engineering was sufficiently and definitely prescribed as to be constitutionally valid should be determined by the statutory definitions obtaining at the time of the execution of the contract which made the question material, not those established by the legislature in a later revision of the law on the subject. Compare Philadelphia Appeal, 383 Pa. 428, 434. It may well be gratifying to realize that a judicial construction accords with the understanding of the legis-

lature in another connection, particularly when it is apparent that matters of pride and public standing on the part of the undertaking fraternity itself are also present; such considerations, however, in themselves have no part in the judicial process.

The third decision involving the problem of the instant case was Hewlett v. Zoning Board of Adjustment, 8 D. & C. 2d 75. In that case, a permit for a funeral director's office in his home in a residential district was refused. The applicable ordinance provision authorized the "office of physician, dentist or other professional person when situated in the dwelling of such physician, dentist or other professional person and incidental to the main purpose of residence." President Judge Kun quite correctly ruled that the Funeral Director Law of 1951 did not control the situation and that he would not follow Paxtang Borough Board of Adjustment v. Arnold, supra, based thereon. He further stated, after referring to the necessity for ascertaining the legislative intent of city council in using the phrase "other professional person", as follows:

"An examination of various dictionary definitions of 'profession' and 'professional' reveals that these terms may be employed in many different senses. See also Howarth v. Gilman, 365 Pa. 50, 56-57. In a broad sense these terms apply to all persons who profess to have special knowledge and who deal primarily in services, as distinguished from occupations of a mercantile or manual nature. In the narrow sense these terms refer to what were once considered the only professions and are now frequently referred to as the 'learned professions', namely, theology, medicine and law."

He concluded, by the rule of ejusdem generis, that the term "other professional person" must have been intended in the narrow and classic sense conveyed by

the particular reference to physicians and dentists which immediately preceded it.

We fully agree with Judge Kun's reasoning under the language there involved. The actual result so reached was most obviously correct under the restrictive context of the pertinent provisions of the ordinance. In the present case, however, the legislative intent is not so clearly expressed, and, in fact, leads to the contrary conclusion.

In Howarth v. Gilman, 365 Pa. 50, at pages 56-57, the Supreme Court stated as follows:

". . . the word 'profession' connotes something more than mere skill in the performance of a task. It has been defined by the courts in numerous opinions, the most comprehensive of which may be found in *U. S. v. Laws*, 163 U. S. 258, and in Webster's New International Dictionary as: 'The occupation, if not purely commercial, mechanical, agricultural, or the like, to which one devotes oneself; a calling in which one professes to have acquired some special knowledge used by way either of instructing, guiding, or advising others or of serving them in some art'."

We believe that the highly specialized functions of a funeral director can reasonably be said to be within this broad definition in view of the comprehensive training, knowledge and experience involved, under the licensing requirements not only of the present Act of 1951, supra, but also under prior legislation, as well as the peculiarly intimate, personal and confidential nature of the indispensable services performed.

We further believe that there is nothing in the Buckingham ordinance which would justify our finding of intention to restrict the word "profession" to the narrow sense of the classic professions of physician, lawyer or clergyman. None of the latter would be consistent with the concept of a "studio" as a place of practice. A funeral home would be no more objec-

tionable, in an agricultural district particularly, than many of the other commercial activities expressly provided for therein. While it may possibly be proper to exclude undertakers from strictly residential areas (see Rick v. Cramp, 357 Pa. 83, 91), constitutional questions of discriminatory regulation may be involved if other equally inconsistent uses are not also similarly prohibited: Johnson v. Village of Villa Park, 370 Ill. 272, 18 N. E. 2d 887. In any event, we are not confronted with a situation involving a solely residential district, and must interpret and apply the word "professional" in its broadest possible sense in the absence of intention to the contrary since restrictions of a zoning ordinance must be strictly construed: United Cerebral Palsy Association v. Zoning Board of Adjustment, 382 Pa. 67, 70, 71, and cases cited. Compare the facts and the result in Marple Township v. Lynam, 151 Pa. Superior Ct. 288.

It is obvious that there is no merit to the board's second contention that to be a "professional office" the practitioner must perform all his duties in the office or room where his bookkeeping is done or his records are kept. Such a construction would lead to the absurb result that no country physician could maintain his practice in his home in an agricultural district if he had a private examining room or if he made any calls outside his home; no lawyer could spend any substantial amount of time in a separate law library or in attendance at court. Manifestly, a more practical and realistic approach must be made to the problem.

Since the words "office or studio" are likewise undefined, they should similarly be considered broadly generic and subject to interpretation under the above principles. They are not words of a technical or narrow meaning, and as here used, are subordinated to the concept of "professional" already discussed. The

whole phrase "professional office or studio" must have been intended to mean the locus where a particular enterprise which might be said to be a profession would have its situs or headquarters and location of practice. It would include a place for the making and keeping of records, but necessarily, in the context used, must also have a broader connotation, a thought further supported by the use of the word "studio". In the sense we are concerned with it, such language must be understood as including a funeral home. Since an undertaker's activities are not prohibited because of the authority for carrying on a profession by the resident practitioner, also permitted are the usual and reasonable facilities thereof, they not being inconsistent with the residential and agricultural district with which we are here concerned, and being "customarily incidental" to his home in the case of a rural undertaker, at least. Since the profession is authorized, the ordinance may not withhold the usual and normal attributes thereof any more than such a municipal regulation might ineffectually attempt to prevent a hotel from having a liquor license where it did not prohibit hotels in general: Sawdey Liquor License Case, 369 Pa. 19; Paxtang Borough Board of Adjustment v. Arnold, supra.

Since the subjects herein discussed have been stipulated to be the only matters precluding the grant of the application of appellants, it follows that the erroneous decision of the board of adjustment should be set aside and the administrative officer directed to issue the permit.

And now, this November 16, 1956, for the reasons stated in the foregoing opinion, the within appeal is sustained and the decision of the board of adjustment is reversed with directions that the permit applied for be issued.