(No. 27002.—Reversed and remanded.)

OAK WOODS CEMETERY ASSOCIATION, Appellee, *vs.* FRAN-
CIS B. MURPHY, Director of Labor, Appellant.

*Opinion filed March 16, 1943—Petition for rehearing stricken
May 14, 1943.
Leave to file amended petition denied September 14, 1943.*

GEORGE F. BARRETT, Attorney General, (WILLIAM C. WINES, of counsel,) for appellant.

CHARLES D. ALBRIGHT, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

The defendant, the Director of the Department of Labor of the State, appeals from a judgment of the circuit court of Cook county, so far as is material here, quashing the record upon his return to a writ of *certiorari* sued out by plaintiff, Oak Woods Cemetery Association, to review the denial by defendant of claims for credit or refund paid under the Unemployment Compensation Act.

Plaintiff was incorporated by special act of the General Assembly in 1853, with power to acquire land and operate and beautify a cemetery. It owns 180 acres on the southeast side of Chicago, secluded behind a high concrete wall and cyclone fences, and completely surrounded by a densely settled residential and commercial area. Although only 10 miles distant from the "loop," it has not been annexed by the city for the reason that it is immune from condemnation, pursuant to an amendment, in 1867, to the act of incorporation. (*Village of Hyde Park* v. *Oakwoods Cemetery Ass'n,* 119 Ill. 141.) Three acres are devoted to nurseries and cold frames, and two are covered by greenhouses. Within this tract of five acres, located at the front entrance of the cemetery, plaintiff maintains a commercial plant costing $143,819.31, exclusive of the land value. Twenty employees constitute its staff. The nursery and

greenhouses produce for sale each year 1,000,000 plants and, also, a very large number of trees, shrubs and cut flowers. Purchasers are largely the owners of lots within the cemetery. Greenhouse equipment consists of a modern building containing six hothouses with a salesroom in front, large-capacity refrigerating plants for cut flowers, display rooms, designing rooms, large potting sheds, a boiler room, office machines, shredders, trucks, automatic sprayers, tractors, and the like. In fact, it is one of the largest greenhouse establishments in Chicago.

The present controversy is limited to the issue of whether certain employees denominated "horticulturists" are engaged in "agricultural labor," within the meaning of section 2 of the Unemployment Compensation Act, as it obtained prior to July 1, 1940. (Ill. Rev. Stat. 1939, chap. 48, par. 218.) There is no controversy with respect to the employees of the greenhouse who are stenographers, bookkeepers, funeral-spray designers, and salesclerks. Twelve or thirteen employees divide their time between the greenhouses and the nursery. Their duties include planting seeds in flats, watering the sprouts, regulating the temperature, potting plants, propagating slippings or cuttings in sand, fertilizing the soil, wiring up carnations and chrysanthemums, making frames, turning soil in the garden, trimming and spraying in the nursery, and shredding dirt. Plaintiff's greenhouse and nursery business is nonseasonal with respect to employment. In other words, the men whose status is in question work eight hours a day, punching a time clock at 8:30 A. M. the entire year.

The greenhouse business is a part of plaintiff's cemetery business. The accounts of the patrons of the greenhouses are kept in plaintiff's office and, according to plaintiff's president, when charge accounts become in arrears, "We slap a charge against the lot and they can't use the lot until they pay the charge." The cemetery has two listings in the Chicago classified telephone directory, one under

"cemeteries" and the other under "florists." Each listing shows the same telephone number. When contracts for ornamentation are executed with a lot owner, the name of plaintiff is used. It is plaintiff, not the greenhouses, which is a member of the Allied Florists Association, furnishing telegraph service. Plaintiff advertises in two neighborhood papers without, however, mention of its greenhouse services. About 2500 order forms for grave ornamentation are mailed each year by the greenhouses to regular customers, most of which result in sales. The close relationship of the greenhouses to plaintiff is apparent from the testimony of its president who said, "All of our merchandise that is grown there is sold to people who come in to the cemetery; they put them or have us put them on their lots or graves." To a query as to whether the greenhouses were incidental to the major purpose of the cemetery, the witness answered, "Well, that's true, yes, because if we depended on any profit from the greenhouse, we wouldn't stay there long," and, further, "The greenhouses wouldn't exist without the cemetery. Its prime purpose is to serve the cemetery and also to make money if we can."

Plaintiff made contributions under the Unemployment Compensation Act during 1937, 1938 and 1939, and the first three quarters of 1940, for the employees whose services have been described. January 8, 1941, plaintiff filed claims for credit or refund of these contributions pursuant to section 25(d) of the statute. (Ill. Rev. Stat. 1941, chap. 48, par. 242.) The Director found that the horticultural workers were covered prior to July 1, 1940, and denied the claims for refunds as to this period. Their wages, after July 1, 1940, it was further found, were not subject to contributions. Conformably to the statute, plaintiff then filed with the Director its written protest and petition for a hearing. A representative of the Director of the Department of Labor conducted a hearing and filed her report recommending that the determination of the

Director, to the extent relevant here, be affirmed. Plaintiff interposed objections to the report of the Director's representative. Thereafter, the Director made his decision sustaining the report. In due course, plaintiff sued out a writ of *certiorari* pursuant to section 25(a)2, the circuit court of Cook county sustained the writ, set aside the decision of the Director and awarded the refunds sought by plaintiff in the sum of $1254.85. This appeal by the Director followed.

Plaintiff's motion to dismiss the appeal requires initial consideration. The contention, among others, is made that defendant has neither legal nor statutory right to appeal from the judgment of the circuit court which he assails. In particular, plaintiff urges that the applicable statute does not authorize defendant or the Attorney General, on his behalf, to defend his decisions or determinations under section 25(d). Recourse to relevant provisions of the Unemployment Compensation Act becomes necessary. The Social Security Act of the United States was passed in 1935. Unemployment Compensation laws of the States followed, induced by the enactment of the Federal statute. The purpose of our act, approved June 30, 1937, (Ill. Rev. Stat. 1941, chap. 48, par. 217,) is set forth in section 1, which concludes: "It is the considered judgment of the General Assembly that in order to lessen the menace to the health, safety and morals of the people of Illinois, and to encourage stabilization of employment, compulsory unemployment compensation upon a state-wide scale, providing for the setting aside of reserves during periods of employment to be used to pay benefits during periods of unemployment, is necessary." The statute is an exertion of the police power of the State. Relief of unemployment is a public purpose. (*Carmichael* v. *Southern Coal Co.* 301 U. S. 495. Again, in *Singer Sewing Machine Co.* v. *State Unemployment Compensation Com.* 167 Ore. 142, 116 Pac. (2d) 744, the Supreme Court of Oregon said "The para-

mount purpose is one of relief under the police power." Without question, the State and the people of the State are directly interested in the administration of this ameliorative statute. To achieve its salutary objective, the General Assembly has seen fit to confer considerable power upon the Director of Labor. In collecting contributions from those denominated employers and, again, by distributing benefits to eligible claimants, section 9(b) provides for the determination of eligibility to unemployment compensation benefits. Section 14 ordains that any decision of the board of review or of the Director in cases of decisions made pursuant to section 9(b), in the absence of an appeal, shall become final 20 days after the date of mailing, and that judicial review shall be permitted only after any party claiming to be aggrieved thereby has exhausted his administrative remedies as provided by the act. It is expressly provided: "The Director shall be deemed to be a party to any judicial action involving any such decision and shall be represented by the Attorney General." In a limited sense it is, of course, true that the only parties having a direct pecuniary interest in the disposition of claims for benefits are the unemployed claimant and his former employer. *In re Mitchell,* 220 N. C. 65, 16 S. E. (2d) 476. The people of the State have, however, an interest paramount to the personal interest of the employer and employee where refunds are sought by an employer. Section 23 provides: "(a) All contributions collected under this Act together with any interest thereon; all fines and penalties collected pursuant to this Act; any property or securities acquired through the use of such moneys; all earnings of such property or securities and any interest earned upon any such moneys shall be paid or turned over to and held by the State Treasurer as *ex-officio* custodian thereof separate and apart from all public moneys or funds of this State and shall be administered by the Director exclusively for the purposes of this Act. No such moneys shall be paid

or expended except upon the direction of the Director in accordance with such regulations as he shall prescribe pursuant to the provisions of this Act."

Section 25(d) provides for refunds and adjustments. Judicial review of the decision of the Director shall be had in the same manner as is provided by section 25(a)2. Section 25(d) provides further: "The decision of the Director shall be final and conclusive unless reviewed within the time provided in Section 25(a)2." An express provision permitting the Director of Labor to appear in appeals involving the matter of the return of contributions and the administration of the funds collected by him would have been superfluous. It by no means follows that, because the legislature deemed it necessary to assure his appearance as a party in appeals involving unemployed claimants, a like requirement was necessary where the refund of contributions is sought, as here. Section 25(a)2 is sufficiently comprehensive in scope to cover cases of applications for refunds. It provides, "Judgments and orders of the Circuit Court under this Act shall be reviewed by appeal to the Supreme Court in the same manner as in other civil cases." Plaintiff's application for refunds of contributions paid by it presents for decision the question of whether the Director of Labor shall disburse sums from the funds which he administers. No other party could reasonably be expected to defend such an application. A different construction would lead to absurd consequences. If the Director can not be a party to an appeal, the provision for appeals from the circuit court to the Supreme Court becomes meaningless. The State, and the people of the State, being directly concerned with the enforcement of the Unemployment Compensation Act, the right of the Director of Labor to represent them in his official capacity. cannot be doubted. It follows that the Attorney General enjoys the right to appear for the Director, a State officer, by virtue of section 4 of the act in regard to Attorneys General and State's Attor-

neys (Ill. Rev. Stat. 1941, chap. 14, par. 4,) which provides, in part: "The duties of the attorney general shall be * * * Third—To defend all actions and proceedings against any state officer, in his official capacity, in any of the courts of this state or the United States."

Plaintiff also insists that defendant cannot prosecute an appeal because the litigation involves exercise of his own *quasi*-judicial functions under section 25. A similar situation is presented under the Retailers' Occupation Tax Act. In *Department of Finance* v. *Cohen,* 369 Ill. 510, we pointed out that the General Assembly cannot deal with the details of every particular case and that reasonable discretion as to the manner of executing a law must necessarily be given to administrative officers. *People ex rel. Swartchild & Co.* v. *Carter,* 376 Ill. 590, is to the same effect. Also, *Department of Finance* v. *Gandolfi,* 375 Ill. 237. The Director of Labor exercises discretion in the performance of his duties in administering the Unemployment Compensation Act. Unless, however, he is vested with discretion as to whether the act shall or shall not apply, the discretion lodged in him is a valid grant of power. Plaintiff does not charge that he has unlimited discretion, and this opinion is not to be construed as deciding the question of the constitutionality of the grant of power. *Nega* v. *Chicago Railways Co.* 317 Ill. 482, and *Grand Trunk Western Railway Co.* v. *Industrial Com.* 291 Ill. 167, are analogous. This court, in the two cases last cited, held that the Industrial Commission was an administrative board,—nonjudicial in character,—although in the exercise of its duties it performs *quasi*-judicial functions. It follows that the Director of Labor is not a judge attempting to appeal from the decision of a higher court, overruling his own judgment. Cases to this effect, relied upon by plaintiff, are not in point.

Plaintiff cites cases to the effect that this court lacks jurisdiction for the reason that the revenue is not directly involved. We do not assume to decide at this time whether

the revenue is involved in appeals under the Unemployment Compensation Act. It suffices to observe that the statute itself confers the right of direct appeal to this court from judgments and orders of the circuit court. Similarly, authorities holding that the State is not interested in the case, within the contemplation of the Civil Practice Act, are beside the point. Plaintiff's motion to dismiss, taken with the cause, is denied.

The decisive question presented is whether plaintiff's employees, whose duties have been previously described, are engaged in "agricultural labor," within the contemplation of section 2(f)(6) of the Unemployment Compensation Act. The Federal Social Security Act of 1935 (42 U.S.C.A. secs. 301-310,) declared: "The term employment shall not include—(A) 'agricultural labor'." The language of our Unemployment Compensation Act, as it obtained prior to July 1, 1940, was precisely the same. Neither statute defined the term. The Federal law has since been amended to state that the term "agricultural labor" includes various services. As amended in 1939, the Social Security Act states the term "farm" includes "greenhouses." In 1940, the General Assembly amended the Unemployment Compensation Act of this State to make it conform to the Federal Social Security Act, as amended. So far as pertinent, section 2(f)(6) of our statute now provides: "(6) The term 'Employment' shall not include—(A) Agricultural labor. On and after July 1, 1940, the term 'agricultural labor' includes all services peformed—(1) On a farm, * * * As used in this subsection the term 'farm' includes stock, dairy, poultry, fruit, fur bearing animal, and truck farms, plantations, ranches, nurseries, ranges, greenhouses, or other similar structures, used primarily for the raising of agricultural or horticultural commodities, and orchards." Admittedly, since July 1, 1940, "agricultural labor" includes greenhouses. The words "agricultural labor" must be construed, however, according to the legislative intent as of

the time of the enactment of the statute and not as of the time of its amendment in 1940. (*Material Service Corp. v. McKibbin,* 380 Ill. 226; *People ex rel. Holvey* v. *Kapp,* 355 Ill. 596; *Empire Voting Machine Co.* v. *City of Chicago,* 267 Fed. 162.) Defendant contends that plaintiff's employees were not engaged in agricultural labor, according to the meaning of the term as it existed in the original act, and that the legislative intent reflected in the present definition of agricultural labor did not become effective until July 1, 1940. Plaintiff maintains, on the other hand, that its greenhouse workers were engaged in "agricultural labor," within the meaning of the Unemployment Compensation Act from its inception, and that, in consequence, were excluded from its benefits prior, as well as subsequent to, the amendment.

The declaration of public policy in section 1 of the act discloses that one of the primary purposes of the statute was to lighten the load of farmers and rural communities. Section 1 proclaims: "Farmers and rural communities particularly are unjustly burdened with increased taxation for the support of industrial workers at the very time when agricultural incomes are reduced by lack of purchasing power in the urban markets." To this end, "agricultural labor" was exempted from the provisions of the statute. Referring to reasons for exempting agricultural laborers, the present Chief Justice of the United States, in *Carmichael* v. *Southern Coal Co.* 301 U. S. 495, pointed out: "The character of the exemptions suggests simply that the state has chosen, as the subject of its tax, those who employ labor in the processes of industrial production and distribution * * *. Administrative considerations may explain several exemptions. Relatively great expense and inconvenience of collection may justify the exemption from taxation of * * * farmers, * * * not likely to maintain adequate employment records, which are an important aid in the collection and verification of the tax."

An additional reason for the exemption of agricultural labor is its seasonal character. In short, defendant's contention is that the legislature's exemption of agricultural labor was intended to benefit the farmers of the State and that "agricultural labor" was a delicate way of describing "farm labor." Plaintiff is not a farm. It is, instead, a corporation for profit and, so far as the record discloses, a prosperous corporation. The greenhouse enterprise is an auxiliary to its principal business. Adequate employment records are present. The greenhouse business is not a seasonal enterprise and its employees are not seasonal employees. The essential characteristics of the employment of the greenhouse workers are the incidents usually associated with industrial labor rather than farm labor. Manifestly, the reasons supporting the general exemption of "agricultural labor" do not apply to plaintiff.

Websters New International Dictionary (2d ed.) defines "agricultural": "Of, pertaining to, or dealing with, agriculture; * * * also, characterized by or engaged in farming as the leading pursuit." Agriculture is defined as "The art or science of cultivating the ground, and raising and harvesting crops, often including also feeding, breeding, and management of live stock; tillage; husbandry; farming; in a broader sense, the science and art of the production of plants and animals useful to man, including to a variable extent the preparation of these products for man's use and their disposal by marketing or otherwise. In this broad use it includes farming, horticulture, forestry, dairying, sugar making, etc." The basic meaning of "agricultural labor" is farm labor.

Reliance upon cases arising under workmen's compensation laws, the Fair Labor Standards Act, and the Federal Bankruptcy Act cannot avail plaintiff. *Davis* v. *Industrial Commission of Utah*, 206 Pac. 267, holds that a sheep herder is an "agricultural laborer," not entitled to compensation for injuries. *Bucher* v. *American Fruit Growers*

*Co.* 163 Atl. (Pa.) 33, holds that a fruit-grower's employee injured while returning from hauling apples to a shipping point is "engaged in agriculture," within the purview of the Workmen's Compensation Act. *Hill* v. *Georgia Casualty Co.* 45 S. W. (2d) (Tex.) 566, holds that a nursery laborer is an agricultural laborer within the meaning of the exemption in the compensation law applicable to "farm laborers" and "ranch laborers." *Walling* v. *Rockmin,* 42 Fed. Supp. 355, holds that a partnership operating a greenhouse and flower gardens, and selling flowers, plants and floral pieces, is exempt from the Fair Labor Standards Act, as exclusively engaged in agriculture. *Dye* v. *McIntyre Flower Co.* 144 S. W. (2d) (Tenn.) 752, holds that employees raising flowers on a large tract operated as a farm were engaged in "agricultural or horticultural commodities for market," within the exemption provisions of the Fair Labor Standards Act. *In re Horner,* 104 Fed. (2d) 600, holds that one who is engaged exclusively in raising tomato plants to sell to others who actually grow the tomatoes for marketing is "engaged in producing products for the soil" so as to be "a farmer" within the meaning of section 75(r) of the Bankruptcy Act dealing with agricultural compositions and extensions. These and like cases do not support plaintiff's contention that a large greenhouse establishment operated by a cemetery is engaged in agricultural labor under the Unemployment Compensation Act, the objective of which is far different from the basic purposes of the workmen's compensation statutes, the Federal Fair Labor Standards Act and the Bankruptcy Law of the United States.

The question of whether "agricultural labor," as employed in our Unemployment Compensation Act, is sufficiently pervasive to include greenhouse workers is one of novel impression. A majority of the decisions in other jurisdictions is in harmony with the view of this court. *Christgau* v. *Woodlawn Cemetery Ass'n,* 208 Minn. 263,

293 N. W. 619, closely parallels the present case. The question presented was, as here, whether labor rendered in a greenhouse on the grounds of a cemetery was "agricultural labor," as the term was employed in the unemployment compensation law of Minnesota exempting "agricultural labor" from its provisions. Some of the cemetery employees were exclusively employed in a greenhouse on the cemetery grounds propagating plants and flowers for beautifying and maintaining the cemetery and sale to lot owners for planting on graves. It was held that such labor was not agricultural labor within the meaning of the statute.

*Park Floral Co.* v. *Industrial Com.* 104 Colo. 350, 91 Pac. (2d) 492, holds that employees of a floral company engaged chiefly in growing plants in greenhouses are not engaged in "agricultural labor," within the provision of the Unemployment Insurance Act of Colorado exempting an employer of agricultural labor from contributions for unemployment insurance. The court observed: "It must not be overlooked that the Unemployment Insurance Act looks to the achievement of social security for labor and not to the classification of fruits of the soil. While unquestionably it is true that the production of an agricultural crop involves as an essential factor 'agricultural labor' as exempted by the act, it is equally certain, * * * that such labor is but one of several elements to be considered. The place, the method and manner of production, as well as the labor practices employed, must be weighed. By the evolutionary processes attendant on our present-day business methods, many activities formerly embraced in farming operations or in intimate connection therewith, have become specialized and removed from the farm, and when this is accomplished such work may properly be regarded as thereby becoming industrial in nature, rather than agricultural in the common conception of that term." In determining the meaning of the words "agricultural labor,"

the court observed: "The maintenance of a clerical and bookkeeping staff by the company, which doubtless keeps accurate records of its labor operations, negatives the likelihood of administrative difficulties in ascertaining and collecting contributions, which has been said to be one of the factors motivating and justifying the exemption of certain types of labor, including agricultural under unemployment insurance acts similar to ours. * * * The greenhouses and retail stores of the company certainly can not be said to be 'farms in the ordinarily accepted sense,' and workers engaged in this branch of the company's business obviously do not perform services 'on a farm.' "

In *Unemployment Compensation Division* v. *Valker's Greenhouses, Inc.* 70 N. D. 515, 296 N. W. 143, the defendant contended that the labor of ten of its employees came within the section of the statute exempting persons employed in "agricultural labor." Defendant operated a greenhouse covering about one acre under glass, located on an 18-acre tract of land on the outskirts of Minot. The employees of the greenhouse devoted their efforts exclusively to this enterprise. Their labor was unskilled and was of the same type as used on farms. The employees devoted about one half of their time to working inside the greenhouse and the rest of the time outside, chiefly on the 18-acre tract. The Supreme Court of North Dakota decided that, in ascertaining whether an enterprise shall be exempt from payment of contributions to the unemployment compensation fund on the ground that employees are engaged in "agricultural labor," conditions under which products of the enterprise are produced and labor employed must be considered as well as practices used. Accordingly, it was held that labor rendered in a greenhouse and on a tract of land cultivated in connection therewith was not "agricultural labor," the greenhouse being primarily an industrial enterprise.

*St. Louis Rose Co.* v. *Unemployment Compensation Com.* 348 Mo. 1153, 159 S. W. (2d) 249, holds that em-

ployees engaged in growing roses and other flowers in greenhouses for sale are engaged in agricultural labor within the meaning of the Unemployment Compensation law of Missouri. In this case, defendant grew roses and other flowers in four greenhouses, occupying about ten per cent of the acreage of a tract of 21 acres. The view was expressed that agriculture was more comprehensive than farming and that, in its broader sense, it applied as well to horticulture in a garden or nursery. In *Dreer, Inc.* v. *Unemployment Compensation Com.* 21 Atl. (2d) (N. J.) 690, the employer operated a large rural tract as an ordinary farm and, incident to its operation, grew plants and bulbs for sale. The view was adopted that the business of the employer was agriculture, including the sowing of seed, tilling of the ground, clearing of weeds, fertilizing, gathering the product, and marketing it, which last consisted mainly in packing and shipping. Dreer's business was deemed to be agricultural throughout. The *Dreer case* is, obviously, not parallel with the present case.

The fact that the Social Security Act was amended in 1939, so as to bring greenhouses within the exemption applicable to employers of agricultural labor, is not decisive. The change thus made is an amendment and not merely an interpretaion of the language used in the original enactment. (*Christgau* v. *Woodlawn Cemetery Ass'n,* 208 Minn. 263; *Unemployment Compensation Division* v. *Valker's Greenhouses, Inc.* 70 N. D. 515.) In the *Christgau case,* the court said: "The amendment (to the Social Security Act) discloses an intention to continue the statute in part and to change it in part. There was not only clarification, but change of meaning. * * * In order to exclude labor in a greenhouse not located on the employer's farm it was necessary to enlarge the definition of agricultural labor so as to cover such greenhouse labor. This appears upon the face of the statute to have been the purpose."

Finally, plaintiff places reliance upon certain rulings of Federal administrative agencies. It is fundamental that

316

rules of administrative agencies concerning what industries are engaged in agricultural labor, within the purview of unemployment insurance acts, are not binding upon the courts. *Park Floral Co.* v. *Industrial Com.* 104 Colo. 350.

We hold that plaintiff's greenhouse employees were not engaged in agricultural labor, within the contemplation of the Unemployment Compensation Act, as originally enacted, and, further, that they were not exempt from its provisions until the effective date, July 1, 1940, of the amendment to section 2, stating that "agricultural labor" includes greenhouses.

The judgment of the circuit court of Cook county is reversed and the cause remanded, with directions to quash the writ of *certiorari.*

*Reversed and remanded, with directions.*