Ernest A. KAEPPLER (doing business as G. A. Kaeppler & Son) et al.,

v.

JAMES H. MATTHEWS & COMPANY, et al.

Civ. A. No. 25618.

United States District Court
E. D. Pennsylvania.

Feb. 3, 1960.

692

Richardson Blair, Ballard, Spahr, Andrews & Ingersoll, Charles V. Stoelker, Jr., Meehan, Neil & Richette, Philip C. Patterson, Rappeport, Newman & Patterson, Philadelphia, Pa., for plaintiffs.

Charles M. Solomon, Fox, Rothschild, O'Brien & Frankel, Francis Hopkinson, Drinker, Biddle & Reath, David H. Rosenbluth, Stradley, Ronon, Stevens & Young, Frank E. Hahn, Jr., Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., Richard A. Montgomery Media, Pa., William D. Harkins, Oscar Brown, H. James Sautter, Ralph S. Croskey, Philadelphia, Pa., for defendants.

EGAN, District Judge.

This is a civil class action for treble damages and injunctive relief under the anti trust law.

The plaintiffs are five monument dealers in the Greater Philadelphia area who brought this action on behalf of themselves and all other monument dealers in that area. The fifth plaintiff was added by stipulation after the suit was started. The defendants are all of the leading cemetery memorial parks in that area and their supplier, James H. Matthews & Company, of Pittsburgh, Pennsylvania, The Gorham Manufacturing Co., and its sales subsidiary, Gorham Company, of Providence, Rhode Island, all of whom shall be referred to as "supplier defendants." The supplier defendants are in the business of selling bronze grave markers used in cemetery memorial parks. The complaint alleges a conspiracy between the supplier defendants and the cemetery defendants and other cemeteries, which conspiracy, for present purposes, may be briefly described as having for its object the exclusion of plaintiff monument dealers from this market in violation of the anti trust laws.

The plaintiffs' motions, which are presently before this Court, seek:

1. Permission to add as named plaintiffs some 13 additional monument dealers located in various parts of the Commonwealth of Pennsylvania, beyond the Greater Philadelphia area.

2. Permission to add as named defendants 22 additional cemeteries located in the trading areas of the proposed additional named plaintiffs, and

3. Permission to expand the present class action into a class action on behalf of all of the monument dealers in the Commonwealth of Pennsylvania. As thus expanded, the class represented will consist of approximately 300 monument dealers.

The venue, in treble damage suits, fixed by the Clayton Act, 15 U.S. C.A. § 15 [1] (formerly Section 7 of the

---

1. "Any person who shall be injured in his business or property by reason of any-

thing forbidden in the anti trust laws may sue therefor in any district court of the

Sherman Act), is in the district in which defendant resides or is found, or has an agent. The same Act, 15 U.S.C.A. § 22 [2] provides that the venue in case of anti trust suits against a corporation shall be in the district whereof it is an inhabitant, or in which it is found, or transacts business. Because of the above venue provisions, a court in which a treble damage action is pending has no authority to bring in defendants who reside outside the district in which the court is held. This was specifically held in Georgia v. Pennsylvania Railroad Co., 324 U.S. 439, at page 466, 65 S.Ct. 716, at page 730, 89 L.Ed. 1051 where the Supreme Court of the United States said,

"It is true that § 5 of the Sherman Act [15 U.S.C.A. § 5] empowers the court before whom proceedings under § 4 [15 U.S.C.A. § 4] are pending to bring in parties *who reside outside the district in which the court is held*. That procedure is available in civil suits brought by *the United States*. Standard Oil Co. v. United States, 221 U.S. 1, 46, 31 S.Ct. 502, 510, 54 L.Ed. 619. But since § 4 is limited to suits brought by the United States, § 5 is similarly confined. See Greer Mills & Co. v. Stoller, C.C., 77 F. 1; Hansen Packing Co. v. Armour & Co., D.C., 16 F.Supp. 784, 787. Apart from specific exceptions created by Congress the jurisdiction of the district courts is territorial. As stated in Robertson v. Railroad Labor Board, 268 U.S. 619, 622, 623, 45 S.Ct. 621, 622, 623, 69 L.Ed. 1119;

" 'In a civil suit in personam jurisdiction over the defendant, as distinguished from venue, implies, among other things, either voluntary appearance by him or service of process upon him at a place where the officer serving it has authority to execute a writ of summons. Under the general provisions of law, a United States district court cannot issue process beyond the limits of the district, Harkness v. Hyde, 98 U.S. 476, 25 L.Ed. 237; Ex parte Graham, Fed.Cas.No.5,657, 3 Wash. [C.C.] 456, and a defendant in a civil suit can be subjected to its jurisdiction in personam only by service within the district. Toland v. Sprague, 12 Pet. 300, 330, 9 L.Ed. 1093. Such was the general rule established by the Judiciary Act of September 24, 1789, C. 20, § 11, 1 Stat. 73, 79, in accordance with the practice at the common law. Piquet v. Swan, Fed. Cas.No.11,134, 5 Mason 35, 39 et seq. And such has been the general rule ever since. Munter v. Weil Corset Co., 261 U.S. 276, 279, 43 S.Ct. 347, [349] 67 L.Ed. 652.' " (Emphasis supplied.)

See also, Hansen Packing Co. v. Armour & Co., D.S.S.D.N.Y.1936, 16 F. Supp. 784.

Counsel for plaintiffs insist, however, that the joinder as defendants of non-residents of the district is specifically authorized by § 1392(a) of Judicial Code [28 U.S.C.A. § 1392(a)], which provides that:

"Any civil action, not of a local nature, against defendants residing in different districts in the same State, may be brought in any of such districts."

The answer to this contention is that §§ 1391–1393 of the Judicial Code

---

United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." 15 U.S.C.A. § 15, Act October 15, 1914, C. 323, § 4, 38 Stat. 731.

2. "Any suit, action, or proceeding under the anti trust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found." 15 U.S. C.A. § 22, Act October 15, 1914, C. 323, § 12, 38 Stat. 736, § 22.

694

are general venue sections applicable to ordinary actions and have no significance where special statutes fix the venue of particular actions, such as treble damage actions under the anti trust laws, or cases under the Employers' Liability Act, 45 U.S.C.A. § 51 et seq. and patent infringement and similar cases.

It is true that in United States v. National City Lines, 1949, 337 U.S. 78, 69 S.Ct. 955, 93 L.Ed. 1226, the Supreme Court of the United States held that the removal clause of the Judicial Code, 28 U.S.C.A. § 1404(a), applied to all civil anti trust cases. But the Court took great pains to point out that it reached this conclusion because it was of the opinion that Congress by this new enactment, which was included for the first time in the Judicial Code of 1948, intended to change the prior law which prohibited such removal in cases where the venue was specifically fixed by a special statute. See the earlier case of United States v. National City Lines, 1948, 334 U.S. 573, 68 S.Ct. 1169, 92 L.Ed. 1584.

In a companion case under the Federal Employers' Liability Act, Ex parte Collett, 337 U.S. 55, at page 59, 69 S.Ct. 944, at page 946, 93 L.Ed. 1207, which held that § 1404(a) the removal clause, applied generally to any civil action, including suits brought under the Federal Employers' Liability Act, the Supreme Court was careful to point out that § 1391 and § 1393 of the Judicial Code were obviously "intended by Congress to be the general venue sections applicable to ordinary actions", and therefore were not intended to change the law as to venue imposed under special acts of Congress.

A similar conclusion was reached in Fourco Glass Company v. Transmirra Products Corporation, 353 U.S. 222, 77 S.Ct. 787, 791, 1 L.Ed.2d 786, decided on April 29, 1957, in which case the Supreme Court held that the special venue provisions of § 1400(b) of the Code relating to patent infringement suits were the exclusive venue sections relating to such actions, and that patent infringe-

ment suits could not be brought under the general venue sections, 28 U.S.C.A. §§ 1391–1393. Mr. Justice Whittaker, speaking for the Court, said:

"We think it is clear that § 1391 (c) is a general corporation venue statute, whereas § 1400(b) is a special venue statute applicable, specifically, to all defendants in a particular type of actions, i. e., patent infringement actions. Under these circumstances the law is settled that 'However inclusive may be the general language of the statute, it will not be held to apply to a matter specifically dealt with in another part of the same enactment. * * * Specific terms prevail over the general in the same or another statute which otherwise might be controlling' * * * *"

■ For the foregoing reasons, we must conclude that there can be no class action, or action against two or more defendants jointly in a treble damage suit unless each defendant named in the class satisfies the relevant venue provisions of the Clayton Act. In our case, each defendant must be an inhabitant of, or transact business within this district, or be found here.

A similar conclusion was reached in the case of Arkay Infants Wear v. Kline's, Inc., D.C.Mo.1949, 85 F.Supp. 98, which held that in a patent infringement case, there can be no class action, or action against two or more defendants jointly, unless each person named in the class, or as defendant, lives in the district, or has committed an act of infringement within the district in which the action is brought. The Court went on to say at page 100:

"United States v. National City Lines, relied on by plaintiff, does not compel an opposite ruling. Such decision is directed to Section 1404 (a) of the New Code, relating to change of venue, after original venue has properly attached in an action. The Court there makes clear that it is only construing a statute which

deals with the right of transfer of an action after it has been properly brought and that the provisions of section 1404(a) of the Code does not limit, or otherwise modify, any right granted by a statute that lays original venue."

■ We conclude, therefore, that those cemetery companies who are not inhabitants of this district, do not transact business here, who are not found here, within the meaning of the venue section of the Clayton Act, cannot be added as additional defendants.

■ Slightly different considerations govern the question of joinder or intervention of the proposed additional plaintiffs. An action to recover treble damages under the anti trust laws is a "spurious" class action. The types of relief sought for the class are several. In effect, it is but a congeries of separate suits. Wagner v. Kamper, D.C. W.D.Mo.1952, 13 F.R.D. 128. It is essentially a device for permissive joinder and its appropriateness in a given case must be tested in terms of advisability of joining all claims within a described category. For this reason, a clear definition of the class is essential. D & A Motors, Inc. v. General Motors Corp., D.C.S.D.N.Y.1956, 19 F.R.D. 365. A spurious class suit does not grant authority to adjudicate finally rights as to non-appearing parties, or to confer any additional substantive rights upon the plaintiffs suing. It is merely an invitation to members of the affected class to join in the action, and if they do not so join, they cannot be bound by the result. Mutation Mink Breeders Ass'n v. Lou Nierenberg Corp., D.C.S.D.N.Y.1959, 23 F.R.D. 155. It does not legally affect the rights and obligations of those who do not intervene. All American Airways v. Elderd, 2 Cir., 1954, 209 F.2d 247.

■ Furthermore, treble damage anti trust actions are founded not upon the mere existence of a conspiracy but upon injuries which result from the commission of forbidden "overt" acts by the conspirators. Suckow Borax Mines Consolidated, Inc. v. Borax Consolidated, Ltd., 9 Cir., 1950, 185 F.2d 196. Each plaintiff in a treble damage anti trust suit must allege and prove that it suffered legal damage to its business or property resulting proximately from the alleged unlawful overt acts of the defendants.

■ It would appear that the cemetery business, as well as the monument business, is highly localized and competition is practically limited to the immediate vicinity or trading area of a given cemetery, or a local monument dealer. A monument dealer located outside the trading area of a particular cemetery defendant is not likely to be affected to any degree by any overt act of such cemetery defendant in furtherance of its alleged conspiracy with the supplier defendants.

For the foregoing reasons, it would make for a clearer definition of the class of permissible plaintiffs to limit the class to such of them as are located within the Eastern District of Pennsylvania, they being the ones who are most likely to have been affected by any of the overt acts of the permissible class of cemetery defendants. The class, as thus limited, will make for a more expeditious trial and disposition of this law suit.

If any proposed additional plaintiff is located outside the Eastern District of Pennsylvania, but within the trading area of any cemetery defendant, a separate petition for intervention may be presented and it will be considered.

Accordingly, we have concluded—

(a) To permit the joinder of such of the proposed additional cemetery defendants as are located, transact business or are found in the Eastern District of Pennsylvania, and

(b) To permit the joinder of such of the proposed additional plaintiffs as are located in this district.

Counsel will prepare a form of decree consistent with this opinion and submit it to the Court for approval.