STATE OF ILLINOIS, Community High School District No. 88 of Villa Park, Illinois, Alton Community Unit School District No. 11 of Alton, Illinois, etc. and those Illinois School Districts individually and specifically enumerated as party plaintiffs herein in Schedule A attached to this complaint, Plaintiffs,

v.

BRUNSWICK CORPORATION, Wayne Iron Works, Universal Bleacher Company, Fred Medart Manufacturing Co., Safway Steel Products, Inc., Consolidated Foundries and Manufacturing Corp., all corporations, Defendants.

No. 62 C 451.

United States District Court
N. D. Illinois, E. D.
Jan. 31, 1963.

454

William G. Clark, Atty. Gen., Chicago, Ill., Lee A. Freeman, Special Asst. Atty. Gen., for plaintiffs.

Chadwell, Keck, Kayser, Ruggles & McLaren, Chicago, Ill., for Safway Steel Products, Inc.

Walker Smith and John P. Morris, Chicago, Ill., Wallace M. Mullikin, Champaign, Ill., for Universal Bleacher Co.

Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., for Fred Medart Mfg. Co.

Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., for Brunswick Corp.

Sonnenschein, Lautmann, Levinson, Rieser, Carlin & Nath, Chicago, Ill., James C. Mallien, Quarles, Herriott & Clemons, Milwaukee, Wis., for Wayne Iron Works.

Fink & Coff, Chicago, Ill., for Consolidated Foundries & Mfg. Corp.

ROBSON, District Judge.

This is a civil antitrust treble damage suit wherein the State of Illinois on its own behalf [1] and on behalf of the school districts of Illinois, seeks $1,890,000 damages alleged to arise out of a conspiracy in violation of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2) involving folding gymnasium bleachers.

The original complaint, filed February 14, 1962, in two counts, was brought by the State of Illinois "for itself, its agencies and public institutions and for the various school districts of the state, individually and by class in a representative capacity * * * by William G. Clark, Attorney General of Illinois." By "Amendments to Complaint" the title of the cause was amended to read as entitled above.

Schedule A is an "Enumeration of School Districts Individually and Expressly Made Parties Plaintiff To This Complaint And In This Proceeding" followed by some 195 named school districts throughout Illinois.

1. The State also filed on behalf of "its agencies and public institutions. * * *" The answers to interrogatories identify the "institutions" as five named Universities, a teacher's college, two schools and a hospital (who have passed resolutions specifically authorizing the Attorney General to act in their behalf).

The Attorney General in the Amendments filed November 13, 1962, states his cause of action in three capacities: (a) on behalf of the State of Illinois "as proprietor of state institutions which purchased folding gymnasium bleachers"; (b) on behalf of the plaintiffs listed in Schedule A "who have by express resolution [2] authorized the Attorney General of the State of Illinois to take all appropriate legal action in connection with the federal antitrust conspiracy alleged in this complaint," and further alleges:

"Such * * * School Districts, are public corporations organized and operating under legislative authority of the General Assembly of Illinois, for the purpose of exercising part of the governmental powers and in such exercise function as local agencies of the State of Illinois. Such * * * School Districts received state funds [3] for the operation of schools and purchased folding gymnasium bleachers from one or more of the defendants within the period covered by this complaint * * *"

and (c) "as representative of a class, pursuant to Rule 23 of the Federal Rules of Civil Procedure, consisting of the various school districts who received state funds for the operation of schools * * * and who are situated similarly to those school districts described in * * * (b) * * *."

Briefly stated, the conspiracy, allegedly beginning about 1954, artificially restricted or eliminated competition in the sales of the bleachers, fixed and maintained prices at arbitrary levels, and unreasonably restrained interstate trade, depriving purchasers of the benefits of competitive bids on bleachers. These charges are predicated on a July 13, 1959, indictment (59 CR 85) in the Eastern District of Wisconsin against these defendants (and some individuals), to which Brunswick, Wayne, Universal, Medart, and Consolidated entered pleas of nolo contendere. Judgments of guilty were entered on those pleas.

The defendants are alleged to have annual sales of $13,000,000 throughout the United States, doing over 90% of the business in said items. It is further alleged that plaintiff, and the school districts which it represents, have purchased in excess of $2,100,000 of bleachers manufactured or sold by defendants, which was an amount "in excess of $630,-000 above the amount that would have been paid in the absence of the conspiracy alleged. * * *"

The following motions have been filed by the defendants:

(1) Wayne Iron Works moves to quash service as to it and dismiss the complaint.

(2) Fred Medart Manufacturing Company also has moved to quash service and dismiss the complaint.

(3) All the defendants have moved to dismiss and strike those allegations in the complaint wherein the Attorney General of Illinois sues on behalf of all the school districts of the State, and other entities which they deem him without authority to represent. The Court concludes this motion is without legal basis and the Attorney General is asserting his constitutionally and statutorily granted powers, buttressed as he is here by express resolutions authorizing his representation of the additionally named plaintiffs. Further, the Court concludes plain-

2. "WHEREAS, the Attorney General of the State of Illinois, acting in his official capacity to protest and further the legal interests of the State and its political subdivisions, has offered to act as the legal representative of this district in connection with these matters, at no expense to the district."

3. Ranging from $124,388,000 for the period 1951-3 to $393,396,000 for 1961-3.

tiffs may maintain this cause as a spurious class action.

*Motion of All Defendants to Dismiss As To, and To Strike Certain Parts Of The Complaint.* This motion challenges the right and authority of the Attorney General (a) to sue as proprietor on behalf of any State institution which is a separate corporate entity or is operated by or a part of a separate corporate entity (unless specifically designated by statute as legal representative thereof); (b) to represent the school districts listed, and reference to them as party plaintiffs is immaterial and impertinent since he is without authority to represent them, and (c) to dismiss ¶ 3(c) of the complaint as amended as failing to state a claim for a proper class action and praying that every reference to class action be stricken as immaterial and impertinent.

■ The Court concludes as to (a) and (b), that while it can be argued there is doubt under the authorities, nevertheless, the Attorney General [4] in this instance has authority not only to represent the State of Illinois as proprietor of State institutions which are not incorporated, but also those which are incorporated with powers to sue and be sued, especially where those corporations fail to exercise those corporate powers and the funds of the State have been utilized for their support and allegedly tortiously purloined due to illegal conspiracy. The Court further concludes that the complaint with its amendments states a good spurious class action.

The Illinois Attorney General's office is created by the Constitution, Article V, § 1, S.H.A., which states:

"The executive department shall consist of a governor * * * and attorney general * * * and [they] shall perform such duties as may be prescribed by law."

The statutes state his duties (Ill.Rev. Stat.1961, ch. 14, §§ 4, 5) as follows:

"The duties of the attorney general shall be—

&ast; &ast; &ast; &ast; &ast;

"Second—To institute and prosecute all actions and proceedings in favor of or for the use of the state, which may be necessary in the execution of the duties of any state officer. * * *"

&ast; &ast; &ast; &ast; &ast;

"Fourth—To consult with and advise the several state's attorneys [5] in matters relating to the duties of their office * * *.

&ast; &ast; &ast; &ast; &ast;

"Eighth—*To enforce the proper application of funds appropriated to the public institutions of the state* * * *." (Italics supplied.)

The 1915 case of Fergus v. Russel, 270 Ill. 304, 342, 110 N.E. 130, 145, broadly described the office of Attorney General thus:

"As the office of Attorney General is the only office at common law which is thus created by our Constitution *the Attorney General is*

---

4. The Attorney General points out it is not *he* who is plaintiff, but the State and specified school districts (which "by resolution, expressly authorized" him to appear in their behalf). He further points out the legal characterization of the districts is such that he has full authority to represent them. (Scown v. Czarnecki, 264 Ill. 305, 106 N.E. 276, L.R.A.1915B, 247 (1914); People ex rel. Taylor v. Camargo Community Consolidated School District No. 158, 313 Ill. 321, 145 N.E. 154 (1924); People ex rel. Gibson v.

Peller, 34 Ill.App.2d 372, 181 N.E.2d 376 (1962).

5. The duties of the State's Attorney are (Ill.Rev.Stat.1961, ch. 14, § 5):
   "The duty of each state's attorney shall be—
   "First—To commence and prosecute all actions * * * in any court of record in his county, in which the people of the state or county may be concerned.
   "Second—To prosecute * * * all actions and proceedings for the recovery

*the chief law officer of the state,* and the only officer empowered to represent the people in any suit or proceeding in which the state is the real party in interest, except where the Constitution or a constitutional statute may provide otherwise. With this exception, only, he is the sole official adviser of the executive officers, and of all boards, commissions, and departments of the state government, and it is his duty to conduct the law business of the state, both in and out of the courts." (Italics supplied.)

A similar statement is found in People ex rel. Castle v. Daniels, 8 Ill.2d 43, 132 N.E.2d 507 (1956).[6]

At the other pole,[7] is the 1943 decision in People ex rel. Board of Trustees of the University of Illinois v. Barrett, 382 Ill. 321, at p. 347, 46 N.E.2d 951, at page 964, where the Supreme Court of Illinois said:

"Neither the constitution nor the statutes, however, have conferred upon the Attorney General the power, or imposed upon him the duty, to represent public corporations, their managing trustees or other officers. No such powers or duties existed at the common law.

\* \* \* \* \*

"It is not the duty of the Attorney General to represent either the cor-

of debts, revenues, moneys, fines, penalties and forfeitures accruing to the state or his county, or to any school district \* \* \* in his county \* \* \*.

"Third—To commence and prosecute all actions and proceedings brought by any county officer in his official capacity.

\* \* \* \* \*

"Tenth—To perform such other and further duties as may, from time to time, be enjoined on him by law."

6. See 1949 University of Illinois Law Forum, p. 507, "The Relationship between the Attorney General and the State's Attorney in Illinois." People ex rel. Elliott v. Covelli, 415 Ill. 79, 112 N.E.2d 156 (1953); People ex rel. v. Newcomer, 284 Ill. 315, 120 N.E. 244 (1918); People ex rel. Barrett v. Finnegan, 378 Ill. 387,

poration or the trustees, by virtue of his office, as chief law officer of State. He has no right to do so. Both the university as a public corporation and its trustees are entitled to select their own legal counsel and advisor and to be represented in all suits brought by or against them by counsel of their own choice. \* \* \* "

However, at p. 353, 46 N.E.2d at p. 967, the Court further said:

"The Attorney General was in error in assuming that he was the *sole* legal representative of the University of Illinois, or its trustees." (Italics supplied.)

At pages 508, 512–14, of the 1949 University of Illinois Law Forum, it was stated in the Forum treatise that "there can be no doubt that the Attorney General of Illinois not only possesses common law powers, but that the legislature cannot deprive him of any of these powers. \* \* \* The only conclusion tenable is that the state's attorney may exercise his constitutional common law powers *concurrently* with those of the Attorney General. \* \* \* *[W]hile neither can exercise his powers to the exclusion of the other, they may be exercised in aid of the other.* \* \* \* Viewed in the light of the Illinois constitution and the Supreme Court decisions, we find that *the broad common law powers of these two officers are concurrent.*

38 N.E.2d 715 (1941); Hunt v. Chicago Horse & Dummy Ry. Co., 121 Ill. 638, 13 N.E. 176 (1887); 4 Illinois Law and Practice, Attorney General and State's Attorney, § 12.

7. A similarly limited construction of the powers of the Attorney General was announced in People ex rel. Lowe v. Marquette National Fire Insurance Company, 351 Ill. 516, at pp. 527–528, 184 N.E. 800, at p. 804 (1933), where it was said: "It has long been the rule under the common law that the Attorney General may not appear in cases in which the public generally is not interested. \* \* \* The functions of that office must be confined solely to matters concerning the state or the public generally."

\* \* \* [W]e again see a system of concurrent powers to be exercised in cooperation with those vested in the other office." (Italics supplied.)

In view of the breadth of common law powers of the constitutionally created office of the Attorney General, the specific statutory powers given him, and the many decisions commenting on the span of those powers to protect the interests of the State, the Court is loath to adopt the limited construction of those powers which defendants assert. There is no public body here protesting that the Attorney General has usurped its powers to prosecute this alleged cause of action. Defendants even challenge the joinder by, and the delegation of authority by, the nearly 200 school districts who have "by express resolution authorized the Attorney General of the State of Illinois to take all appropriate legal action in connection with the federal antitrust conspiracy alleged in this complaint." Their joinder confirms the Court's belief that the Attorney General is not here intermeddling but is really assisting those entities. There are said to be some 1525 Illinois school districts. It is conceivable that the amounts at stake for each litigant would hardly warrant a full scale treble damage antitrust suit. Additionally, since the Attorney General has specific statutory power "to enforce the proper application of funds appropriated to the public institutions of the state" that power could possibly be construed to encompass the recovery of those funds when improperly extracted from those institutions. The State is just as much a financial loser where the funds are misapplied by a public official through an outsider's misfeasance as by the official's own wrong.

The 1949 University of Illinois Law Forum discussion on "The Relationship Between the Attorney-General and the State's Attorney In Illinois" pointed out that while it might have been supposed the duties of the State's Attorney were subtracted from those of the Attorney General, comprehending a system involving two separate and independent spheres of authority, the "cases do not bear out such a construction of the constitution." It states, at p. 512:

"The only conclusion tenable is that the state's attorney may exercise his constitutional common law powers concurrently with those of the Attorney-General." (Citing People v. Mortenson, 224 Ill.App. 221). (Italics supplied.)

Further, at p. 513:

"While neither can exercise his powers to the exclusion of the other, they may be exercised in aid of the other." (Italics supplied.) " \* \* \* [W]e find that the broad common law powers of these two officers are concurrent. If either officer fails to act, the power still remains in the other to go ahead and institute such proceedings as he deems proper."

In People of the State of Illinois v. Illinois Toll Highway Commission, 3 Ill. 2d 218 (1954), at p. 236, 120 N.E.2d 35, at p. 45, it was said:

"An inherent power of the Attorney General is the exclusive prerogative of conducting the law business of the state, both in and out of the courts, except where the State constitution or a constitutional statute may provide otherwise."

There it was held that the counsel for the Illinois State Toll Highway Commission were completely subordinate to the Attornew General by statute. Kindred holdings are found in People ex rel. Kunstman v. Shinsaku Nagano, 389 Ill. 231, 59 N.E.2d 96 (1945); Fergus v. Russell, 270 Ill. 304, 110 N.E. 130 (1915), and People ex rel. Elliott v. Covelli, 415 Ill. 79, 112 N.E.2d 156 (1953).

The Court believes the instant situation is somewhat analogous to that indicated in People ex rel. Woll v. Graber, 394 Ill. 362 (1946), at p. 375, 68 N.E.2d 750, at p. 757:

"To hold that the court has the power, upon the unproved allegations of

the complaint, to determine that the interests of the United States are not involved and to order the withdrawal of the Attorney General from the case, would authorize the court to prejudge the case and would destroy the discretionary power vested by Congress in the Attorney General to determine such question."

The decision of Keplinger v. Lord, 357 Ill. 571, 192 N.E. 549 (1934), defined when the State has an interest in litigation thus:

"The state is interested in a case, within the contemplation of the particular section of the Practice act, only when it has a direct and substantial, as distinguished from a mere nominal, interest in the subject-matter of the litigation. * * * Moreover, the direct and substantial interest which is the condition of a direct appeal, it has been said, must be an interest of a monetary character."

In both Turkovich v. Board of Trustees, 11 Ill.2d 460, 143 N.E.2d 229 (1957), and Barco Manufacturing Co. v. Wright, 10 Ill.2d 157, 160, 139 N.E.2d 227 (1956), a taxpayer was held to have the right to correct misuse of public funds. In the Turkovich case, supra, the Attorney General appeared, as did counsel for the University of Illinois. It was said the right of the taxpayer was based upon their "ownership of such funds and their liability to replenish the public treasury for the deficiency caused by such misappropriation. The misuse of these funds for illegal or unconstitutional purposes is a damage which entitled them to sue." Similarly, it would seem the taxpayer and the Attorney General would be equally interested in innocent diversion by school districts of such funds through an illegal exaction.[8]

In People ex rel. Barrett v. Finnegan, 378 Ill. 387, at p. 393, 38 N.E.2d 715, at p. 717 (1941), it was said:

"As chief law officer of the State he may exercise all such power and authority as public interest may from time to time require."

It could be argued that school bleachers are strictly local in character with no state-wide public interest involved.[9] In reality, however, the public right sought to be vindicated is an allegedly illegal overcharge to every public school district throughout the State purchasing the bleachers from defendants, which overcharges were met with State appropriated funds.

There is an intimation in People ex rel. Nelson v. Marion Trust and Savings Bank, 347 Ill. 445, 175 N.E. 893 (1932), that until funds are segregated into the county fund they do not belong to it but to the State. That is, until distribution to the various subdivisions, money collected by the county collector for taxes is the property of the State and the State is entitled to priority over other creditors of an insolvent bank where such funds are on deposit. It could be contended, therefore, that the State has the right to supervise the assertion of these triple damage claims.

The Court notes the fact that this suit has been pending for just less than a year without a challenge by other than those charged with inflicting the wrong. Further, the Court notes that the statute of limitations is about to run which would impede injured parties who were lulled by the failure until November 26, 1962, of defendants to challenge the Attorney General's right to sue on behalf of all of them, from now individually bringing their own suits.

8. In Oak Woods Cemetery Association v. Murphy, 383 Ill. 301, 306, 50 N.E.2d 582, 584, (1943), it was said that "The people of the State have, however, an interest paramount to the personal interest of the employer and employee where refunds are sought by an employer."

9. In the vein of discussion found in Brown v. Trustees of Schools, 224 Ill. 184, 79 N.E. 579 (1906).

■ The Court, therefore, concludes that the Attorney General is justified in this unique instance in seeking to represent any and every State agency or school district which may have overpaid with State appropriated funds for bleachers because of this single illegal conspiracy, especially where *no* school district or other entity has appeared to challenge his right to represent them and his right to act has generally been held to be concurrent with that of the State's Attorney or other counsel for such entities.

■ *Class Action.* Defendants move to strike paragraph 3(c) of the complaint as amended as failing to state a proper class action and praying that every reference in the complaint to the purported class action be stricken. As noted above, this suit is brought by the State of Illinois, for itself, its agencies and public institutions, the various school districts of the State as individually and specifically enumerated, as party plaintiffs in the schedule, a part of the complaint, and all other Illinois school districts similarly situated by class, in a representative capacity, all through the Attorney General of Illinois. These plaintiffs charge a continuing, illegal conspiracy to fix prices and conditions for the sale of folding gymnasium bleachers purchased by the State and the school districts, individually and as a class, and a conspiracy to allocate the market and submit noncompetitive, collusive and rigged bids to public and governmental agencies, school districts and universities, including plaintiff and the school districts which it represents. The complaint recites many other alleged illegal acts by the defendants in the course of the conspiracy, which was the subject of an indictment against these defendants in the United States District Court for the Eastern District of Wisconsin, July 13, 1959, (59

CR 85), and the civil suit, No. 59 C 163, in the same court for an injunction against these defendants.

■ The Court concludes that this basis for the motion to dismiss or strike is unfounded. These plaintiffs are asserting a proper spurious class suit. The law is firmly settled in this Circuit by the decision in Kainz v. Anheuser-Busch, Inc., 194 F.2d 737 (7 Cir., 1952),[10] that *those injured by an illegal conspiracy may properly join in a class suit.*

In Weeks v. Bareco Oil Co., 125 F.2d 84 (7th Cir., 1941), the Court said at p. 88:

"Strong and persuasive reasons favor the extension of the class suit theory to include a suit to vindicate the rights of several persons contemporaneously injured by a criminal conspiracy effectuated by the same conspirators and directed against a specific class of individuals. Among such reasons, are

"(1) The statutory tort, incident to a criminal conspiracy, is a single thing, a single wrong, and though a compound of many acts and persons, it has a singleness of object, an integral core.

"(2) The illegal conspiracy gives rise to one statutory cause of action for damages incident to the violation of law. Many persons may have the identical cause of action, arising from the same wrong, but varying in scope of damage to each, depending upon the effect of the illegal act upon the individual.

"(3) * * * In the instant action, we have a class composed of so many claimants that it is impracticable to join them as parties; there is a common question of fact—the ex-

10. Similar decisions are: Hurd v. Illinois Bell Telephone Company, 234 F.2d 942 (7th Cir., 1956); State Wholesale Grocers v. Great Atlantic and Pacific Tea Company, 24 F.R.D. 510 (D.C.Ill.1959); Kaeppler & Son v. James H. Matthews & Co., 180 F.Supp. 691 (D.C.Pa. 1960); P. W. Husserl, Inc. v. Simplicity Pattern Co., 25 F.R.D. 264 (D.C.N.Y.1960); Weeks v. Bareco Oil Co., 125 F.2d 84 (7th Cir., 1941).

istence of an alleged conspiracy to injure the jobbers."

We have here "common elements of fact and law, but based upon separate and individual claims growing out of the same transaction." (Hurd v. Illinois Bell Telephone Company, 234 F.2d 942 (7th Cir., 1956)) We have a case where the plaintiffs have "a right to recover damages for a wrong done all, even though the amount of damages recoverable differs for the different plaintiffs." (Kainz v. Anheuser-Busch, Inc., 194 F.2d 737 (7th Cir., 1952)) In that case, it was specifically said at p. 741:

"* * * [T]here can be no question but that it is the law of this circuit that persons claiming to have been injured in their respective businesses by another's conspiracy to violate Sections 1 and 2 of the Anti-Trust Act constitute a so-called spurious class for which less than the full number of injured persons may maintain a Class suit under Rule 23(a)(3), provided plaintiffs will adequately represent the class."

It is the Court's firm belief that the Attorney General, in conjunction with the nearly 200 districts which have now joined in the suit, "will adequately represent the class."

The rights here sought to be enforced "are several but embrace common questions of law and fact" and "common relief is sought." (Kainz v. Anheuser-Busch, Inc., supra.) There can be no question but that a suit such as the instant one will "avoid a multiplicity of suits." (Weeks v. Bareco Oil Co., 125 F.2d 84 (7th Cir., 1941))

The Weeks v. Bareco Oil Co., supra, case covers in detail the principles underlying the reasons for the class suit rule and its applicability to antitrust suits of this nature and finds them completely compatible. Thus the Court said at pp. 90–91:

"To permit the defendants to contest liability with each claimant in a single, separate suit, would, in many cases give defendants an advantage which would be almost equivalent to closing the door of justice to all small claimants. This is what we think the class suit practice was to prevent. Like many another practice, necessity was its mother. * * *

"Defendants would probably not suffer from such a joinder assuming they must stand suit. In fact, it should be beneficial to them—they have but one suit to meet, instead of innumerable ones. * * *

* * * * *

"There is no question but that the amount recoverable by each possible claimant, is different * * *.

"True, damages must be shown, but the 'common question of law or fact' is the existence or absence of defendants' wrongful conduct,—the unlawful combination or conspiracy to prevent competition and raise prices. * * * [T]he heart of the controversy is the unlawful combination. * * *"

▮ Defendants challenge the validity of this class action in that they deduce an inference that the Attorney General has solicited all the 1,525 school districts in Illinois and was able to procure *only* some 194 of them willing to join herein, leaving 1,331 districts who, they conclude, either purchased no bleachers or "declined" to join. This is not a wholly justified "reading between the lines"—there could be many other explanations for such failure, such as failure of the school district to meet, inertia or negligence.

▮ Defendants further challenge plaintiffs' showing of the "propriety" of their class action, or that they would "adequately represent all of the members of the alleged class." This Court is not "troubled" or "bothered," as are the defendants, by the adequacy of the Illinois Attorney General's ability to represent adequately the remaining members of the class, and it has no doubt

whatsoever as to the existence here of "a common question of law or fact affecting the several rights of all members of the class." In this type of case, it would not reasonably assume that " '[a purported class member] might well prefer a contest with one of these defendants, to a lawsuit with all of them' " or "prefer no contest with any defendant." In fact, the contrary is inferable from this record.

 Defendants also contend that there is here no "showing of homogeneity" of claim or that the action was one "wherein all members of the class were 'damaged in the same way, for the same reason, in the same manner, but in a different amount.' "—the test laid down by the Kainz decision. This is a motion to dismiss where we accept the fact allegations of the complaint for the purpose of disposition of the motion. As the Court views the facts alleged, there is a close parallel in the facts alleged to support this class action and those alleged in the Kainz and Weeks' cases. Defendants' contention that plaintiffs' claims are "disparate" is specious. Defendants state:

> "One claim is different from another, therefore, in that different buyers purchased equipment from different manufacturers at different times and for different prices. Furthermore, some of the purchases relied upon by plaintiffs were made, after inviting bids, from the low bidder, while other purchases were made from other than the low bidder or through a negotiated purchase. Many purchases were made from dealers, many from general contractors. The differences in relationship * * * is sic obvious. These relationship differences are critical to the issue of *injury*. * * *." (Italics supplied.)

This Court believes that a plain reading of the Kainz and Weeks' cases can lead to no conclusion other. than that the cause of action here alleged by all is a *single* one, based on the statutory violation, and that it is immaterial that its effectuation might have differed as to each plaintiff.

The November 26, 1962, "Motion of all Defendants to Dismiss as to, and to Strike Certain Parts of the Complaint" is denied.