[File No. 6703.]

UNEMPLOYMENT COMPENSATION DIVISION OF THE WORKMEN'S COMPENSATION BUREAU, a Department of the State of North Dakota, Appellant, v. VALKER'S GREEN- HOUSES, Incorporated, a Corporation, Respondent.

(296 N. W. 143.)

Opinion filed January 6, 1941.   Rehearing denied February 11, 1941.

*W. Ray Reichert* and *Arthur B. Atkins,* for appellant.

*Thorp, Wattam & Vogel,* for respondent.

MORRIS, J. This is an action brought by the Unemployment Compensation Division of the Workmen's Compensation Bureau of North Dakota to recover from Valker's Greenhouses, Inc., contributions claimed to be due under the North Dakota Unemployment Compensation Act. This law is chapter 232, N. D. Session Laws 1937, as amended by chapter 215, N. D. Session Laws 1939.

The Unemployment Compensation Act requires contributions to be made to the State Unemployment Compensation Fund from certain employers. It states that "employer" means, "Any employing unit which for some portion of a day in each of twenty different weeks, whether or

not such weeks are or were consecutive, within either the current or the preceding calendar year, has or had in employment eight or more individuals." § 2(f) (1).

It is further provided by § 2(h) of the act that "(6) The term employment shall not include: (4) Agricultural labor."

The defendant had fourteen employees during the year 1937. It contends that the labor of ten of these employees comes within the exemption in that they were employed in agricultural labor and that as a consequence, the number of employees of the class that would require the defendant to make contributions is only four; and therefore no contributions are required by the terms of the act.

The defendant, as its name implies, operates a greenhouse. This structure covers about one acre under glass and is located on an eighteen acre tract of land in the outskirts of Minot. In connection with the greenhouse, the defendant also leased another tract of seven acres of land near by. This tract is used chiefly for pasture and hay land. Of the eighteen-acre tract, approximately fourteen acres are under cultivation. In addition to the greenhouse, there is located on this tract a large barn used to house four head of cattle, two horses, and two Shetland ponies. This livestock is fed chiefly on the produce from the two tracts. There is also a small barn in which machinery and tools are housed. Water is secured from two or three wells. Pumping is done by an electric motor. The milk from two cows is used by the families of two employees who live in apartments above the greenhouse. None is sold. The greenhouse is heated by a system fed by an automatic stoker. No janitor is employed. The soil within the greenhouse is watered by a sprinkling system.

The defendant, in addition to the greenhouse, operates a store in the business section of Minot where four people are employed. The employees of the greenhouse devote their efforts exclusively to that enterprise. The labor is unskilled and of the same type as is used on farms. Two or three extra men are employed in the spring. The work of the other employees is fairly constant. These employees devote about one half of their time to working inside the greenhouse and the rest of the time outside chiefly on the eighteen-acre tract.

The labor is performed by hand or with the two horses kept on the premises. The enterprise is devoted chiefly to raising flowers, shrubs,

plants, and trees for sale. Sales are made through the down town store. About three acres of sweet corn is raised every year, also about two acres of potatoes. The sweet corn is sold but the potatoes are used. Some hay is sold. The soil in the greenhouse is changed each year. The president of the corporation testified that it does not do a nursery business to any extent.

The sole question in this case is whether the persons employed by the defendant in connection with its greenhouse enterprise are employed in agricultural labor. The question is rendered difficult by the fact that the term agriculture is inexact. It has been employed by the courts and legislatures many times but not always with the same meaning. It has been given a broad or a restricted construction in accordance with the seeming purpose of the legislative enactment under consideration.

Webster's New International Dictionary, 2d ed. defines agriculture as: "The art or science of cultivating the ground, and raising and harvesting crops, often including also feeding, breeding, and management of livestock; tillage; husbandry; farming; in a broader sense, the science and art of the production of plants and animals useful to man, including to a variable extent the preparation of these products for man's use and their disposal by marketing or otherwise. In this broad use it includes farming, horticulture, forestry, dairying, sugar making, etc."

In Carmichael v. Southern Coal & Coke Co. 301 U. S. 495, 81 L. ed. 1245, 57 S. Ct. 868, 109 A.L.R. 1327, the Supreme Court of the United States dealt with a number of questions regarding the constitutionality of the Unemployment Compensation Act of Alabama. Included among the exemptions was that of agricultural labor. Concerning these exemptions, the court said: "The character of the exemptions suggests simply that the state has chosen, as the subject of its tax, those who employ labor in the processes of industrial production and distribution."

While the point under discussion was whether or not the exemption of particular classes of employers specified in the act was arbitrary, the language, nevertheless, aptly describes the general character of the exemptions. The designation of agricultural labor, as one of the exempted classes of employment, applies to a class that is clearly not industrial.

To regard the production of all fruits of the soil, no matter under what conditions they are produced, as being agricultural rather than industrial, would place upon the term agriculture a broader meaning than that intended by the legislature. It would imply a broader meaning than that given to the term in its common usage. We customarily think of agriculture even in its broadest sense as pertaining to a farm.

In Great Western Mushroom Co. v. Industrial Commission, 103 Colo. 39, 82 P. (2d) 751, the supreme court of Colorado considered the meaning of the term "agricultural labor" as used in the exemption provisions of the Colorado Unemployment Compensation Law. The question before the court was whether the employees of a company, engaged in raising, gathering, processing, and packaging mushrooms, were engaged in agricultural labor. It was pointed out that the mushrooms were grown in beds within sheds where the temperature and humidity were controlled, and that the labor turnover was not seasonal. The workers could reasonably expect steady employment. The court arrived at the conclusion that the labor involved was not engaged in agriculture but in a commercial enterprise.

In Park Floral Co. v. Industrial Commission, 104 Colo. 350, 91 P. (2d) 492, the question was whether the employees of the Park Floral Company were engaged in agricultural labor. The company was engaged in the floral business and in that connection owned and operated large greenhouses in which the temperature and humidity were controlled artificially. In the summer a small portion of the flowers and plants was cultivated and grown in tracts adjacent to and outside of the greenhouses. Most of the products were sold at wholesale. A small portion was sold at retail in the company's own store located in down town Denver. In holding that the employees were not engaged in agricultural labor, the court said: "It must not be overlooked that the Unemployment Insurance Act looks to the achievement of social security for labor and not to the classification of fruits of the soil. While unquestionably it is true that the production of an agricultural crop involves as an essential factor 'agricultural labor' as exempted by the act, it is equally certain, as pointed out in Great Western Mushroom Co. Case and in Duys & Co. v. Tone [125 Conn. 300, 5 A. (2d) 23] that such labor is but one of several elements to be considered. The place, the method and manner of production, as well as the labor practices em-

ployed, must be weighed. By the evolutionary processes attendant on our present-day business methods, many activities formerly embraced in farming operations or in intimate connection therewith have become specialized and removed from the farm, and when this is accomplished such work may properly be regarded as thereby becoming industrial in nature, rather than agricultural in the common conception of that term."

In Hein v. Ludwig, 118 Pa. Super. Ct. 152, 179 A. 917, the status of a greenhouse employee was involved. The employee sought compensation under the Pennsylvania Workmen's Compensation Act. If he were engaged in agriculture he would be excluded from the protection of the act and not entitled to compensation. His duties were confined to and about the greenhouses owned by the defendant. These greenhouses, two in number, were located on a fifty-acre tract of land. The defendant also conducted a florist shop in Pittsburgh. In allowing the claim for compensation upon the ground that the employee was not engaged in agriculture, the court set forth these facts: "There is no evidence that any part of the property was cultivated or used as a farm. Its use was limited to the operation of the greenhouses. The claimant, while in charge of the defendant's greenhouses, lived in the dwelling situate near them, which he was permitted to occupy without charge, as part of his wages. The claimant's duties, which were confined to and about the greenhouses, included maintaining the proper temperature, providing the proper moisture, opening and closing the ventilators, planting, clipping, budding, tying up, cutting, and shipping the plants."

And further said: "Agriculture, in the usual and commonly accepted sense of the term, does not include the operation of commercial greenhouses; nor is an employee in charge thereof an agricultural worker. The operation of such greenhouses is more akin to industry than to agriculture. They produce under artificial conditions; while the raising of crops, the growing of fruit, and other similar agricultural activities are under natural conditions. They may be erected and operated practically anywhere a factory can be erected and operated. Such an enterprise is not one of those agricultural activities consisting of, or directly related to the cultivation of the ground in the sense of husbandry. The fact that plants and flowers raised therein are products of

the soil is not controlling, but rather that this is done under artificial conditions in a commercial plant:"

In the recent case of Christgau v. Woodlawn Cemetery Asso. — Minn. —, 293 N. W. 619, it was held that labor performed in a greenhouse on the grounds of a cemetery was not "agricultural labor" as that term is used in the exemption provisions of the Minnesota Unemployment Compensation Law.

Our attention has been called to the fact that Congress amended the Social Security Act in 1939 so as to bring greenhouses within the exemption applicable to employers of agricultural labor. 42 U. S. C. A. § 409 (1). The change wrought by Congress in the Federal Act is an amendment and not merely a legislative interpretation of the language used in the original enactment. Christgau v. Woodlawn Cemetery Asso., supra.

The language employed by the North Dakota legislature is the same as that used by Congress in the original act. Should it be advisable, as the defendant argues, to bring the North Dakota Statute in accordance with the Federal Social Security Act, the function of so doing properly belongs to the legislature which may by amendment bring greenhouses within the purview of the exemption as did Congress.

The enterprise of Valker's Greenhouses, Inc., consisting of the greenhouse and the land used in connection therewith is not a farm. It is essentially a commercial enterprise. Its labor requirements are fairly constant. The conditions under which its labor is employed and its products produced require the use and application of artificial conditions to the extent of approximately 50 per cent of its activity. In the summer most of this activity is carried on outside of the greenhouse. In the winter it is carried on inside under wholly artificial conditions. The greenhouse is not merely an incident to the operation of a farm. It is the heart of the enterprise. The labor employed by this enterprise is not agricultural labor. The defendant is liable for the contributions required by the North Dakota Unemployment Compensation Act. The judgment is therefore reversed and the case is remanded for the determination of the amount of the defendant's liability and for entry of judgment in accordance with such determination.

Reversed and remanded.

Burr, Ch. J., and Christianson, Burke, and Nuessle, JJ., concur.

Morris, J. (on rehearing). A rehearing was granted and this case was reargued. After again considering the entire record, including briefs and arguments of counsel, we adhere to our former opinion.

Burr, Ch. J., and Christianson, Nuessle, and Burke, JJ., concur.