Marple Township *v.* Lynam et al., Appellants.

Argued December 14, 1942.

Before Keller, P. J., Baldrige, Stadtfeld, Rhodes, Hirt and Kenworthey, JJ.

*B. D. Oliensis,* for appellants.

*Ralph L. Lindenmuth,* of *VanRoden & Lindenmuth,* for appellee.

Opinion by Hirt, J., January 28, 1943:

In this action in equity the defendants were permanently enjoined "from planting, growing and selling nursery stock, such as evergreens, fruit and shade trees, ornamental shrubs, etc.," on 2.6 acres of ground owned by them in Marple Township. The question in this appeal involves the construction of a zoning ordinance.

About 10 years ago, 40 acres of land in Marple Township known as the "Rittenhouse Tract" were plotted by the owners as building lots. In August 1941, the defendants bought 35 contiguous vacant lots in

the subdivision—a total of 2.6 acres of land—fronting about 237 feet on the Philadelphia and West Chester Road, a State highway, and extending in a general southerly direction to Springfield Road. The nearest property developed for residential purposes is 700 feet from defendants' land. Between them are uncultivated fields. Defendants for a number of years have used other land in the township for growing of nursery stock; this action was brought when they indicated the intention of putting the land in question to a similar use. The chancellor found that "the said proposed use of the defendants' property would not necessarily constitute a nuisance and would be of more benefit to the community than the present vacant ground, which is uncultivated and overrun with weeds." The injunction was granted solely on the ground that the proposed use was not permitted by the ordinance.

The ordinance zoning the Township of Marple was enacted in 1938. It divided the township into six districts, four of which are residential. Article V, relating to "R-3 Residence District", in which defendants' land is located, deals primarily with building lots and prescribes set-back and other lines of residential buildings when erected upon them. But while vacant, some use of the land is permitted. The material part of the ordinance provides: "A building may be erected, altered or used, and a lot or premises may be used for any of the following purposes and for no other ...... *Farm*, private greenhouse, municipal recreational use, rail-way or bus passenger station, municipal administration building;" and "Accessory use on the same lot with and customarily incidental to any of the above permitted uses ......" The question is whether a nursery where ornamental and other trees and shrubs are grown is a "farm" within the permitted uses of the ordinance. We are all agreed that it is, and the decree will be reversed.

Railway or bus passenger stations are business uses and operating a farm, to a greater or less extent, is a business venture. The fact that the nursery will be conducted for profit therefore does not decide the question. Some business uses are permitted.

In a broad sense a municipal ordinance is a statute (Crawford, Statutory Construction, §3) and the rules of construction are the same as those applied in construing statutes of the legislature, to determine the intention of the municipal legislative body and to give it effect. Ordinances should be construed reasonably, in view of the purposes they are intended to serve. Effect should be given to the object sought to be accomplished, in the light of the circumstances existing at the time of their adoption with proper regard for the consequences which would result from giving them a restricted meaning. 37 Am. Jur., Municipal Corp., §187. Cf. Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS 551. In ascertaining the intent of an ordinance, as of a statute, words and phrases, if not technical, are to be construed according to their common and approved usage. Ibid. §33, 46 PS 533.

The word "farm" has a suggestive significance apart from any explicit or restricted meaning and even in a popular sense is applied to land used for any one of a variety of purposes. Webster (International Dict. 2d Ed.) defines "farm" as "a piece of land held under lease for cultivation; hence, any tract of land ...... devoted to agricultural purposes, generally under the management of a tenant or owner; any parcel or group of parcels of land cultivated as a unit." In the Century Dictionary it is defined as "A tract of land devoted to general or special cultivation under a single control, whether that of its owner or of a tenant: as, a small farm; a wheat-, fruit-, dairy-, or market farm." "Farming" is defined as "The commercial production of any

plant (even *horticultural*) or annual which has economic value." (Italics added.)

The lower court found that "the popular connotation of a 'farm' is a place of several acres where the owner or tenant resides, a substantial portion of which is devoted to the raising of crops, such as wheat, oats, hay, etc., and some vegetables, such as corn and beans, and generally accompanied by the breeding of certain animals such as pigs, cows, chickens, etc., the principal use of the produce being to maintain the farmer and his family and only the excess being sold." Obviously defendants' contemplated use does not come within that definition and the injunction was granted on that ground.

We cannot agree that the township, in the ordinance in question used the word "farm" in that sense. But even a farm of that class has its woodlot and if, for example, locust trees are propagated and grown for sale as fence posts or evergreens as Christmas trees, it is still a farm.

It is a fact of importance that the ordinance was passed long after the land in question was subdivided into lots, and was enacted not only to regulate the character of buildings to be erected but to allow the owners to make some use of their land while the lots remained vacant. The average size of lots in this subdivision is 25 x 125 feet and the ordinance permits the use of a lot as a "farm" with "accessory use on the same lot" incidental to that use. It is apparent that single lots or even the 2.6 acres of land owned by defendants are not adaptable to farming in the sense adopted by the lower court. A general purpose farm requires a substantial acreage. But since it was the intention of the township to permit an owner to use his lot as a farm, the ordinance by necessary implication permits the use of the land for such agricultural specialty as the size of the lot will permit. That which

is implied in an ordinance is as much a part of it as that which is expressed. *Paulsen v. Portland,* 149 U. S. 30, 13 S. Ct. 750. An owner, under the ordinance undoubtedly could use his lot as a flower garden or a truck patch. These uses as well as raising nursery stock to salable size involve the same processes as producing crops on a farm. Using the land in question as a nursery is within the permitted uses under the ordinance.

Decree reversed at the costs of the township.