Nicholas M. BOEHM, Plaintiff and Respondent,

v.

BURLEIGH COUNTY, North Dakota, a political subdivision of the State of North Dakota, and C. L. Kleinschmidt as Treasurer of Burleigh County, Defendants and Appellants.

No. 8150.

Supreme Court of North Dakota.

Sept. 11, 1964.

Helgi Johanneson, Atty. Gen., Joseph R. Maichel, Sp. Asst. Atty. Gen., and Gerald G. Glaser, Asst. State's Atty., Bismarck, for defendants and appellants.

Rausch & Chapman, Bismarck, for plaintiff and respondent.

TEIGEN, Judge.

The defendant Burleigh County has appealed from a judgment adjudicating that the plaintiff's dwelling and other structures or buildings, located on a tract of land which he owns and operates as a nursery, are farm structures located on agricultural lands and, therefore, exempt from taxation under Section 57–02–08(15), N.D.C.C.

The facts are stipulated and the case involves the construction of the tax-exemption statute.

The plaintiff owns 20 acres of land described in the complaint. It is unplatted land located outside the limits of any town or city. On this land he operates a licensed nursery. The plaintiff is now and for many years has been engaged in "the growing, cultivating, raising and marketing of trees, shrubs, flowers and plants and uses the real property described in the complaint for said purpose and further maintains plows, cultivators and other farm machinery and equipment for said purposes."

"That the work and sole employment of plaintiff may be classified as a nursery operator including the cultivating of trees, plants and flowers with sowing of seed and propagation by grafting, budding and other methods using knowledge of plant germination, soil content and growing habits of plant life; that the same are products of the soil and that sales of said products are made to residents of the State of North Dakota; that the products above noted are subject to the same forces of nature as any other product of the soil; that the plaintiff employs labor in the performance of the work herein concerned."

It is also stipulated that plaintiff holds a sales tax permit and that the improvements upon the property which the plaintiff claims to be exempt from taxation include:

"a dwelling in which he and his family reside, together with other structures or buildings used in connection with the aforementioned purposes; * * *."

The sole issue is whether the dwelling, structures or other buildings located upon the land in question, used in connection with the above-described purposes, are exempt from taxation.

Our Constitution provides that all fixtures, buildings and improvements of every character whatsoever upon land shall be deemed personal property for tax-exemption purposes. Section 176, North Dakota Constitution. The exemption statute in question reads as follows:

"All property described in this section to the extent herein limited shall be exempt from taxation, that is to say:

* * * * * *

"15. All farm structures, and improvements located on agricultural lands. This subsection shall be construed to exempt farm buildings and improvements only, and shall not be construed to exempt from taxation industrial plants, or structures of any kind not used or intended for use as a part of a farm plant, or as a farm residence;

* * *." Section 57–02–08, N.D.C.C.

The defendant county admits the land is classified as rural land but argues it does not, for this reason, necessarily fall within the classification of "agricultural lands" as that term is used in the statute. It also argues if the court should find the land is "agricultural lands" that, nevertheless, the buildings and improvements are not exempt from taxation because they do not meet the second condition of the statute for the reason they are not used nor intended to be used as a part of a "farm plant or as a farm residence."

This statute was construed in Eisenzimmer v. Bell, 75 N.D. 733, 32 N.W.2d 891, not to apply to farm structures and buildings situated on a lot within the platted portion of an incorporated city and used to carry on farming operations. In that case we said:

"It was the intention of the legislature to encourage the construction of buildings and improvements on farms, and to that end classified this particular type of property as exempt from taxation. The act therefore must be interpreted in the light of existing laws and conditions."

We then said:

"The term 'agricultural lands,' as used in this act, is descriptive of the land itself as a class, and is used merely to distinguish rural from urban or other properties. The first test is as to the character of the lands; and secondly, the nature of the structures—whether they are used or intended for use as part of the farm plant."

■ This land is rural land and, according to the above definition, is "agricultural lands."

The second test is the nature of the structures—"whether they are used or intended for use as a part of the farm plant."

It is stipulated that the buildings and improvements, and the land, are all used for the same purpose. Thus the use of the land, and of the buildings and improvements, is for a common purpose and constitutes a unit or a plant.

The defendant contends that it would seem reasonable and logical that the legislature, when it first enacted the exemption law in 1919, had in mind land with buildings thereon used for agricultural purposes in the commonly accepted meaning of the term "agricultural"; that is, the land must be used for the purpose of raising crops or rearing farm animals and be of sufficient quantity so as to require the owner-farmer to devote the major part of his time to the operation of the farm with the expectation that the operator would or could derive his principal source of livelihood from the occupation of farming. It also argues that nursery stocks are not farm products and do not constitute a crop but rather are regarded as a stock of merchandise, and that the operator of a nursery is not regarded as a farmer but rather as a merchant connected with a retail or wholesale business. The defendant argues that agriculture is more comprehensive than farming and only in its broad sense applies to "horticulture," which is a term ordinarily applied to the cultivation of an orchard, garden or nursery.

■■ It is well settled that the burden is on the claimant of a tax exemption to establish the exempt status of the property and that the laws under which a tax exemption is claimed will receive a strict construction against the claimant. North Dakota Society for Crippled Children and Adults v. Murphy, N.D., 94 N.W.2d 343.

The facts stipulated in this case do not indicate a greenhouse operation or the application of artificial conditions to produce or market the products. Therefore, Unemployment Compensation Division v. Valker's Greenhouses, 70 N.D. 515, 296 N.W. 143, does not govern. In that case this court held that labor rendered in a greenhouse on a tract of land cultivated in connection therewith was not agricultural labor under the provisions of the Unemployment Compensation Act which excepted therefrom "agricultural labor."

The sole remaining question in this case is whether the plaintiff's property is used as a farm plant. The question is made rather difficult by the fact that the term "farm" is inexact. It has been employed by the courts and legislatures many times but not always with the same meaning. Webster's Third New International Dictionary defines the word "farm" as:

"Any tract of land whether consisting of one or more parcels devoted to agricultural purposes generally under the

management of a tenant or the owner: any parcel or group of parcels of land cultivated as a unit."

Funk and Wagnalls New Standard Dictionary defines "farm" as:

"A tract of land under one control or forming a single property devoted to agriculture, stock-raising, dairy-produce, or some allied industry."

In 35 C.J.S. Farm page 947, it is stated that some centuries ago the word "farm" had a meaning very different from the meaning it has today. It states on page 948:

"In more modern times the word has received a more extended signification, and now denotes, in this country, both in a popular and legal sense, a considerable tract of land, devoted, in part at least, to cultivation, with suitable buildings, and under the supervision of a single occupant, regardless of the nature or extent of his tenure, and in the present day, both in England and the United States, a farm in its ordinary acceptation means any considerable tract of land, or a number of small tracts, devoted wholly or partially to agricultural purposes or pasturage of cattle."

On page 949 it states:

"The word 'farm' implies some tillage of the soil under natural conditions, and also implies cultivation of land for the purpose of production, or use in aid thereof.

"It has been said that what constitutes a farm must differ under the particular statute considered, or the circumstances in the particular case. The word has a suggestive significance apart from any explicit or restrictive meaning, and even in a popular sense is applied to land used for any one of a variety of purposes, and it is generally recognized that the term includes land and buildings, the real estate devoted to agricultural purposes, raising of cattle,

dairying, and the like, and may and often does include not only cultivated land and pasture land, but also woodland."

In Township of Marple v. Lynam, 151 Pa.Super. 288, 30 A.2d 208, the Supreme Court of Pennsylvania construed a city zoning ordinance which provided:

"'A building may be erected, altered or used, and a lot or premises may be used for any of the following purposes and for no other. * * * Farm, private greenhouse, municipal recreational use, railway or bus passenger station, municipal administration building;' and 'Accessory use on the same lot with and customarily incidental to any of the above permitted uses. * * *'"

to include a nursery where ornamental and other trees and shrubs are grown as a "farm" within the permitted uses of the ordinance.

In Dills v. Tennessee Nursery Co., 188 Tenn. 241, 218 S.W.2d 992, the court held a nursery company employee who planted trees, dug them up and got them ready for shipment to customers in various States, and who was killed while towing back a disabled truck from the company's farm, was a "farm or agricultural laborer" within the provisions of their Workmen's Compensation Act exempting therefrom "farm or agricultural laborers."

In re Bronxville Nurseries, 258 App.Div. 1019, 17 N.Y.S.2d 95, the court said that nursery employees engaged in growing of nursery stock or work incidental thereto were "farm laborers" and not "employees" within New York's Unemployment Insurance Law where the major operation of the nursery consisted of preparation, fertilization and cultivation of the soil, seeding, budding, grafting, transplanting and related operations. The court said the operation calls for a knowledge of modern scientific methods and the preparation for market of the finished product, whether it be trees, shrubs, bushes or plants, and that

the term "farm laborer" is sufficiently defined to include the activities of the respondent's employee.

In Ginn v. Forest Nursery Co., 165 Tenn. 9, 52 S.W.2d 141, the court held that where the nursery company had a nursery in the country and also some property in town used for nursery purposes, the nursery employee, who was injured while spading a shrub on the town property, was a "farm or agricultural laborer," and not entitled to compensation for injuries under their Compensation Act. The court said it was "agricultural labor" in a literal sense because the meaning of the word would not be justified in holding otherwise.

In Hill v. Georgia Casualty Co., Tex. Com.App., 45 S.W.2d 566, the Texas court said a nursery laborer was an "agricultural laborer" excluded under their Compensation Act. The court said:

"It is quite evident that there is no more reason for saying that the Legislature meant the term 'farm laborers' to embrace 'ranch laborers' than for saying that the term was intended to embrace horticultural or nursery laborers. It is a matter of common knowledge that the general character of work done in nursery operations is not materially different from work done in other agricultural operations; * * *"

In re Slade's Estate, 122 Cal. 434, 55 P. 158, involved an exemption statute which set apart certain personal property and farming utensils or implements of husbandry of a judgment debtor. The debtor owned 300 acres of land, 150 acres of which were devoted to growing orchard fruits and grapes, 10 acres for garden produce and the balance for hay. The court held that implements used for all of the purposes mentioned were within the definition of the statute exempting farming utensils and implements of husbandry. In that case the argument was that fruit growing was horticulture, grape growing was viticulture and, therefore, the hay tools were the only implements exempt as farm tools. The court reasoned that a farmer is one who is devoted to the tillage of the soil, and that persons who follow this occupation may call themselves horticulturists, viticulturists or gardeners but they are farmers.

In Unemployment Compensation Division v. Valker's Greenhouses, supra, we said on page 520 of 70 N.D., on page 145 of 296 N.W.:

"We customarily think of agriculture even in its broadest sense as pertaining to a farm."

We held that the enterprise of Valker's Greenhouses, consisting of the greenhouse and the land used in connection therewith, was not a farm for the reason that the products produced required the use and application of artificial conditions to the extent of approximately 50% of its activity, and found that the greenhouse was not merely an incident to the operation of a farm but it was the heart of the enterprise and, therefore, the labor for this enterprise was not "agricultural labor" within the definition of the North Dakota Unemployment Compensation Act. We quoted with approval from Park Floral Co. v. Industrial Commission, 104 Colo. 350, 91 P.2d 492, the following:

"By the evolutionary processes attendant on our present-day business methods, many activities formerly embraced in farming operations or in intimate connection therewith have become specialized and removed from the farm, and when this is accomplished such work may properly be regarded as thereby becoming industrial in nature, rather than agricultural in the common conception of that term."

It is obvious from the facts as stipulated in the instant case that the evolutionary processes referred to have not taken place in the plaintiff's operations of this nursery.

"The specific branch of agriculture to which the nursery industry belongs is denominated 'horticulture.' " 67 C.J.S. Nursery page 2.

The products of a nursery are "agricultural products." State v. Wertheimer Bag Co., 253 Ala. 124, 43 So.2d 824.

■ The words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears or the words are explained. Section 1–02–02, N.D.C.C. The meaning of the words "farm" or "farm plant" must, therefore, be construed in their ordinary sense, as no contrary intention appears nor is the term explained by the statute. The definitions set forth above clearly demonstrate to us the ordinary meaning of the word. As ordinarily understood, we believe "farm," for tax-exemption purposes, may be defined as a rural tract or plot of ground with buildings and improvements devoted to agricultural purposes and implies the cultivation of the land under natural conditions for the purposes of production or use in aid thereof, and that the term "agriculture" is sufficiently broad to include "horticulture."

■ It is common knowledge that nurseries existed in this State at the time of the passage of the original legislation. A review of the laws on the statute books at that time illustrates that the Legislatures of that day were desirous of improving and beautifying farms and rural lands by the encouragement and incentive offered in various forms. The statutes provided for the payment of bounties for the planting and maintaining of trees, shrubs and hedges. Sections 2813 to 2816, C.L. of 1913 and amendments thereto. They provided for the inspection and regulation of nurseries under the direction of the director of the North Dakota Experimental Station. Sections 2824 to 2834, inclusive, C.L.1913. Farmers' institutes were provided to instruct farmers on the growing of fruits and forestry, among other things. Sections 1877 to 1880, C.L.1913 and amendments thereto. An agricultural, grass and tree experiment station was established at Mandan. Sections 1641 and 1642, C.L.1913. All of these facilities were operated in connection with either the North Dakota State University of Agriculture and Applied Science, formerly Agricultural College, or the School of Forestry at Bottineau. There was also established the office of State Forester and a State nursery was established. Sections 1679a to 1679d, C.L. 1913. Also, Chapter 136, S.L.1923, providing for the supervision and regulation of transporting of persons and property for compensation, excluded from the term "auto transportation companies" motor-propelled vehicles "operated exclusively in transporting agricultural, horticultural or dairy or other farm products from the point of production to the market," or any other carrier.

We believe the above statutes amply illustrate the State's interest in improving and promoting the use of nursery products and indicate the desire to encourage the establishment and maintenance of nurseries.

■ We are of the opinion that where the land, buildings and improvements, located in a rural area, are used solely for the purpose of growing, cultivating, raising and marketing trees, shrubs, flowers and plants, by the use of plows, cultivators and other farm machinery and equipment, and the work consists of sowing of seed and propagation by grafting, budding and other methods, using knowledge of plant germination, soil content and growing habits of plant life, which are made subject to the same forces of nature as any other product grown in soil without the use of specialized or artificial processes, constitutes a farm plant within the tax-exemption statute.

The judgment is affirmed.

MORRIS, C. J., and BURKE, STRUTZ and ERICKSTAD, JJ., concur.