Edward F. MOREL, Plaintiff
and Appellee,

v.

Bronald THOMPSON, et al., Defendants
and Appellants.

Civ. No. 9057.

Supreme Court of North Dakota.

Jan. 30, 1975.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for plaintiff and appellee.

William G. Heth, Dickinson, for defendant and appellant, Edward Fetch.

David L. Evans, Workmen's Compensation Bureau, and Leonell W. Fraase, Sp. Asst. Atty. Gen., Bismarck, for defendant and appellant, North Dakota Workmen's Compensation Bureau.

ERICKSTAD, Chief Justice.

The issue in this case is whether Edward Fetch, doing business as Ed's Honey Company, was exempt as an employer from complying with the Workmen's Compensation statutes of the State.

On April 13, 1972, Edward F. Morel, while employed by Edward Fetch, doing business as Ed's Honey Company, suffered injury to his right hand when it was caught in the blades of a radial arm power saw. At that time both Morel and Fetch were engaged in sawing lumber to be used in conjunction with the construction of beehives. The accident occurred in a warehouse which Mr. Fetch rented on property formerly used by the Job Corps approximately three miles northeast of Dickinson.

At the Workmen's Compensation hearing, Fetch testified that he had been in the honey business for six years on his own and that prior thereto, he had been employed by the Woodworth Honey Company of Dickinson. He purchased approximately one thousand beehives at $9.50 per hive in January 1972 to be delivered in May of 1972. The beehives were placed in alfalfa and clover fields in the Dickinson area under arrangements with the farmers whereby the farmers would either receive cash or honey in exchange for the privilege of leaving the beehives on their land during the summer. (It is apparently the usual practice to take the bees south into Texas or to a warmer climate during the winter to avoid their death in the cold weather.) Under this arrangement, the farmer had a double benefit in that the farmer acquired a better pollinization of his alfalfa and clover and at the same time secured either honey or cash for permitting the beehives to be placed in his fields.

The honey was collected in the summer and fall and then heated slightly so that it could be liquefied and strained. It was then poured either in fifty-five gallon containers for shipment to large packing companies where it is filtered and clarified or it was poured into smaller containers for sale as raw honey in stores in Dickinson and Beulah and in towns between Dickinson and Beulah. Some honey was stored in the warehouse to supply the small-town stores in the nonproducing season and also honey was stored to feed the bees. Morel was involved in most of these activities during his various periods of employment by Fetch.

After the hearing the Bureau simply found that the keeping of bees and the collecting and selling of honey is an agricultural service and, accordingly, denied Morel's claim under § 65–01–02(4)(a)(1) inasmuch as Fetch had not elected to secure Workmen's Compensation Insurance under § 65–04–29 of the North Dakota Century Code.

Pertinent are the following statutes:

"65–01–05. Employment of those unprotected by insurance unlawful—Effect of failure to secure compensation—Penalty—Injunction.—It shall be unlawful for any person, firm, or corporation to employ anyone, or to receive the fruits of the labor of any person, in a hazardous employment as defined in this title, without first making application for workmen's compensation insurance coverage for the protection of such employees by notice to the bureau of the intended em-

ployment, the nature thereof and the estimated payroll expenditure for the coming twelve month period. * * * " N.D.C.C.

"65–01–02. Definitions. — Whenever used in this title:

* * * * * *

"4. a. 'Hazardous employment' shall mean any employment in which one or more employees are employed regularly in the same business or in or about the establishment except:

"(1) Agricultural or domestic service; or" N.D.C.C.

"65–04–29. Employers carrying on nonhazardous employment may come under law—Employee's option.—Any employer carrying on any employment not classed as hazardous under the definition of that term contained in section 65–01–02 who complies with the provisions of this title and who shall pay into the fund the premiums provided for under this chapter shall be covered under the fund and shall not be liable to respond in damages at common law or by statute for injuries to or the death of any employee, wherever occurring, during the period covered by such premiums. * * * " N.D.C.C.

On appeal to the district court, the judgment of the Workmen's Compensation Bureau dismissing Morel's claim was reversed. It is from the judgment of district court entered on June 7, 1974, that both the Workmen's Compensation Bureau and the employer, Mr. Fetch, appeal.

Notwithstanding that it is the findings of fact of the Bureau that we must sustain if supported by substantial evidence rather than the findings of fact of the trial court, we believe that since the facts are not disputed and the findings of the Bureau are so limited, the trial court's analysis of the facts as contained in its memorandum opinion is pertinent.

"In my opinion Ed's Honey is primarily a commercial operation and enterprise. The hives are put out on farm land in the spring and gathered in the fall. But there is much more going on for months in the building where the honey is processed. Many hives are constructed, the honey is taken out of the combs, it is filtered, heated, packaged and stored. It is sold and delivered. The bees are taken south for the winter."

The trial court stated that it was influenced in concluding that the activity was commercial rather than agricultural by an older decision of this court; to wit, Unemployment Compensation Division of Workmen's Compensation Bureau v. Valker's Greenhouses, Inc., 70 N.D. 515, 296 N.W. 143 (1941).

In *Valker's*, the issue was whether persons employed in conjunction with the operation of a greenhouse were employed in agricultural labor under the then existing Unemployment Compensation Act.

In attempting to determine this issue Justice Morris, writing for the Court, utilized the dictionary and found it of little help.

Our resort to the dictionary has also been rather unproductive. Note the definitions of "agriculture" and "apiculture" from three leading dictionaries in use today.

"agriculture, * * *. 1. The cultivation of the soil for food-products or any other useful or valuable growths of the field or garden; tillage; husbandry; also, by extension, farming, including any industry practiced by a cultivator of the soil in connection with such cultivation as forestry, fruit-raising, breeding and rearing of stock, dairying, market-gardening, etc. * * *. 2. The science that treats of the cultivation of the soil. 3. Polit. Econ. A branch of production treating of the laws and forces of nature, etc., involved in agricultural pursuits. * * * " Funk & Wagnalls New Standard Dictionary of the English Language, Copyright 1963.

"agriculture * * *. The science, art, and business of cultivating the soil,

producing crops, and raising livestock useful to man; farming. * * * " The American Heritage Dictionary of the English Language, Copyright 1973.

"agriculture * * *. la: the science or art of cultivating the soil, harvesting crops, and raising livestock: HUSBAND-RY, FARMING b: the science or art of the production of plants and animals useful to man and in varying degrees the preparation of these products for man's use and their disposal (as by marketing) 2: FARMERS" Webster's Third New International Dictionary of the English Language, Unabridged, Copyright 1971.

"apiculture, * * *. Bee-keeping; the care and management of bees. * * * " Funk & Wagnalls New Standard Dictionary of the English Language, Copyright 1963.

"apiculture * * *. The raising and care of bees. * * * " The American Heritage Dictionary of the English Language, Copyright 1973.

"apiculture * * *: beekeeping esp. when pursued on a large scale." Webster's Third New International Dictionary of the English Language, Unabridged, Copyright 1971.

That which apparently most influenced the trial court in the instant case was the statement of Judge Morris in *Valker's* as follows:

"To regard the production of all fruits of the soil, no matter under what conditions they are produced, as being agricultural rather than industrial, would place upon the term 'agriculture' a broader meaning than that intended by the legislature. It would imply a broader meaning than that given to the term in its common usage. We customarily think of agriculture even in its broadest sense as pertaining to a farm." Unemployment Compensation Division of Workmen's Compensation Bureau v. Valker's Greenhouses, Inc., 70 N.D. 515, 296 N.W. 143 at 145 (1941).

It is interesting to note that in spite of some of the similarities between the operation of a greenhouse and the operation of a farm or ranch, the Court unanimously agreed in *Valker's* that the owner of a greenhouse was not exempt from the provisions of the Unemployment Compensation Act under the agricultural labor exemption.

We believe that in a case such as this where it is doubtful whether an exemption applies that the doubt should be resolved in favor of the laborer, since it was for him that the Workmen's Compensation Act was passed.

We think that what we said in Brown v. North Dakota Workmen's Compensation Bureau is appropriate in this case.

"The legislature, in establishing the Workmen's Compensation Bureau and the fund from which the benefits are paid, asserted that the prosperity of this state depends in a large measure upon the wellbeing of its wageworkers; and to secure this prosperity it provided sure and certain relief for workmen injured in hazardous employment and for their families and dependents." § 65–01–01, N.D. C.C.

"As a corollary to the policy set forth in that section, this court has said that the workmen's compensation act must be liberally construed to promote the ends intended to be secured by its enactment. * * * " Brown v. North Dakota Workmen's Compensation Bureau, 152 N.W.2d 799 at 801 (N.D.1967).

We are not impressed by the argument of the appellants that beekeeping is regulated in North Dakota by the Commissioner of Agriculture under N.D.C.C., Chapter 4–12, or by the argument that the importation of bees into this country is under the control of the United States Secretary of Agriculture and the United States Secretary of the Treasury.

It is our view that the intent of the Legislature as indicated by the Workmen's Compensation statutes must prevail.

Consistent with what we have said in this case is what was said by the Iowa Supreme Court (although applying a statute different in some respects from our Workmen's Compensation statute) when it was considering whether an employer was engaged in agriculture in the operation of a turkey packing plant. In that case, the employer had raised about 8,000 turkeys during the year, half of which were processed and the remainder sold live to packers. The claimant seeking Workmen's Compensation was injured while cleaning the floor in the packing plant.

■ In concluding that the employer was not engaged in agriculture, the Court quoted with approval from C.J.S. as follows:

"'a compensation statute is to be construed liberally and reasonably with the view of extending its beneficent provisions to all who can be fairly brought within them'; and the rule 'applies in determining whether one is within the agricultural or farm worker exemption from the statute'. 99 C.J.S. Workmen's Compensation § 33, pages 190, 191." Crouse v. Lloyd's Turkey Ranch, 251 Iowa 156, 100 N.W.2d 115 at 119 (1959).

The Iowa Court went on to say:

"* * * in case of doubt we must construe the statute liberally and with a view to extend its aid to every employee who can fairly be brought within it. The purpose of the Workmen's Compensation Acts generally is to furnish a measure of protection to those who may be injured while employed;" Crouse v. Lloyd's Turkey Ranch, 251 Iowa 156, 100 N.W.2d 115 at 119 (1959).

■ We conclude that the findings of fact of the Workmen's Compensation Bureau are so insufficient that appropriate conclusions of law could not be drawn therefrom. This resulted in an erroneous conclusion of law being drawn by the Bureau. We have reviewed the findings of the trial court and conclude that they are supported by substantial evidence and the findings of fact support the conclusion of law. § 28–32–19, N.D.C.C. Accordingly, we affirm the judgment of the trial court and remand the case to the Workmen's Compensation Bureau for further proceedings not inconsistent with this opinion. Having so disposed of this case, we will not consider the contention belatedly raised in oral argument by Morel that the agricultural exemption denies him the equal protection of the laws guaranteed him under the Constitutions of the State of North Dakota and the United States of America.

SAND, PAULSON, PEDERSON and VOGEL, concur.