BUTTS FEED LOTS, INC., Appellant,

v.

BOARD OF COUNTY COMMISSIONERS
OF FOSTER COUNTY, Appellee.

Civ. No. 9393.

Supreme Court of North Dakota.

Dec. 27, 1977.

Robert C. Heinley, Carrington, and David E. Nething, Jamestown, for Butts Feed Lots, Inc., appellant; argued by David E. Nething, Jamestown.

Fabian E. Noack, State's Atty., Carrington, for Board of County Commissioners of Foster County, appellee.

PEDERSON, Justice.

This is an appeal by Butts Feed Lots, Inc., (hereinafter Butts) from a decision of the district court which affirmed the denial by the Board of County Commissioners of Foster County (hereinafter Commissioners) of an application for abatement of taxes. The taxes in question were assessed against buildings and structures located on a 296-acre tract owned by Butts. Butts argued before the Commissioners, before the district court, and before this Court that the buildings and structures in question are farm structures and improvements and are, therefore, exempted from taxation as real property pursuant to § 57–02–08(15), North Dakota Century Code.[1]

The Commissioners rejected the application of Butts, stating:

"That the building structures and/or improvements . . . are not farm structures and/or improvements exempt from taxation . . . ."

This denial was appealed to the district court, where trial de novo was had. All of the facts were stipulated, and the entire stipulation is set forth in the findings of fact made by the district court. From those stipulated facts the trial court drew the following conclusions of law:

"1.

"That the Court has jurisdiction over the subject matter and the parties hereto.

---

1. Section 57–02–08(15), NDCC, has been amended since Butts made its application. Our decision is based upon the statute as it read at the time of the application:

"57–02–08. Property exempt from taxation.—All property described in this section to the extent herein limited shall be exempt from taxation, that is to say:

. . . . .

"15. All farm structures, and improvements located on agricultural lands. This subsection shall be construed to exempt farm buildings and improvements only, and shall not be construed to exempt from taxation industrial plants, or structures of any kind not used or intended for use as a part of a farm plant, or as a farm residence. Any structure or structures used in connection with a retail or wholesale business other than farming, even though situated on agricultural land, shall not be exempt under this subsection;"

"2.

"That the appellant is conducting a non-farming business operation and therefore, the structures and improvements are not exempt from taxation under the provisions of North Dakota Century Code 57–02–08.

"3.

"That the appeal of Butts Feed Lots, Inc. be dismissed in its entirety."

It is the second conclusion of law that is challenged on this appeal.

## I.

The first question before the Court is the appropriate standard of review. The trial of this case having taken place entirely on the facts stipulated by the parties, we have before us precisely the same evidence as did the trial court. Although the trial court has properly followed Rule 52(a), NDRCivP, in preparing a memorandum opinion, findings of fact and conclusions of law, we have said that this Court is not bound by that Rule when the evidence ,before the trial court was documentary in nature. *Dolajak v. State Auto. & Cas. Underwriters,* 252 N.W.2d 180 (N.D.1977); *E. E. Bach Millwork Co. v. Meisner & Co.,* 228 N.W.2d 904 (N.D.1975). See also, *In re Koch Estate,* 259 N.W.2d 655 (N.D.1977). In *Dolajak,* we quoted 5A Moore's Federal Practice (2d ed.), ¶ 52.04, p. 2677:

"'A number of courts likewise have held that findings of fact based . . . on stipulated facts . . . are not binding on the appellate court and will be given slight weight on appeal.'" 252 N.W.2d 182.

■ We comment on this standard not in regard to the findings of fact which are labeled as such, those facts being entirely stipulated to, but in regard to the first phrase of the second conclusion of law, that: "the appellant is conducting a non-farming business operation." We consider

this phrase to be a finding of fact. In determining whether findings are of fact or of law, the label placed thereon by the trial court is not conclusive. *Ferguson v. Ferguson,* 202 N.W.2d 760 (N.D.1972). Because all of the facts were presented in documentary fashion, the trial court's finding that Butts "is conducting a non-farming business" will be given only slight weight on appeal. The legal conclusion therefrom that "the structures and improvements are not exempt from taxation under the provisions of North Dakota Century Code 57–02–08" is fully reviewable. *Stockmen's Ins. Agcy., Inc. v. Guarantee Res. L. Ins. Co.,* 217 N.W.2d 455 (N.D.1974), *cert. denied,* 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 108 (1974).

■ Trial de novo having been obtained in the district court, we do not review the decision of the Commissioners.[2] See *Evangelical Luth. G. Sam Soc. v. Board of Cty. Com'rs,* 219 N.W.2d 900 (N.D.1974); *Y. M. C. A. of N. D. State Univ. v. Board of County Com'rs,* 198 N.W.2d 241 (N.D.1972). See also, §§ 11–11–42 and 11–11–43, NDCC.

## II.

■ As a preliminary matter, and in reply to the contentions of the Commissioners, the fact that Butts is a *corporation* which claims an exemption for farm buildings or structures is not determinative of the issues of this case. Nothing in § 57–02–08(15), NDCC, indicates that ownership of the particular buildings or structures is determinative of the exemption. Particularly in reference to the house, there is no requirement that the owner live in an exempt farm home.[3]

In reaching these conclusions we are not ignoring the Corporate Farming Law, Ch. 10–06, NDCC. Possible issues under Ch. 10–06 are not now before this Court. If Butts is in violation of § 10–06–01 (which prohibits all corporations, except as other-

---

2. A contrary rule prevails on appeals originating with decisions of agencies subject to the Administrative Agencies Practice Act, Ch. 28–32, NDCC. The applicable scope of review is set out at §§ 28–32–19 and 28–32–21, NDCC.

3. The amended form of § 57–02–08(15), NDCC, now requires ownership and occupancy if a retired farmer wishes to claim the exemption for his residence.

wise provided in Ch. 10–06, from engaging in the business of farming or agriculture), then it is the duty of the state's attorney of any North Dakota county in which real estate owned by Butts is located to institute an action to escheat title to that real estate to that county. That is the remedy provided by § 10–06–06, NDCC.[4] We will not subvert the right of Butts to due process, either by imposing a penalty not provided by Ch. 10–06, NDCC, or by imposing a penalty without even the initiation of an action as required by that same chapter.

■ In light of the constitutionally required procedures contained in Ch. 10–06, NDCC, we do not find persuasive the arguments by the Commissioners that Butts is estopped to claim an exemption for farm buildings and structures because corporations are prohibited from farming.

■ We are also not persuaded that § 57–02–08(15) was impliedly amended by the Corporate Farming Law so as to engraft a condition that the buildings and structures not be in corporate ownership in order that the exemption apply. While the Commissioners correctly point out the fact that Ch. 10–06, NDCC, was enacted after § 57–02–08(15), NDCC, an implied amendment requires much more than a subsequent statutory change in the same general subject area. We do not, however, deem it necessary to discuss those various requirements as § 57–02–08(15) has been amended and reenacted by Ch. 447, S.L.1973, with no mention of its nonapplicability to corporately held real estate.

While the fact that Butts is a corporation is not determinative of the major issue of this case, this Court cannot ignore the corporate form. In discussing the ownership of the livestock, the stipulated facts make reference to cattle owned by Butts, cattle owned by Lloyd Butts (individually), cattle owned by family members, and cattle owned by others. On oral argument Butts treats all cattle owned by Butts family members exactly as it does corporately owned cattle. We do not. For the purpose of arriving at percentages, we treat all cattle not owned by Butts as owned by others. We likewise differentiate between corporate and noncorporate ownership of land and leases insofar as the facts reveal that ownership.

### III.

In determining whether the buildings and feed lot in question are "farm buildings and improvements" or whether they are "industrial plants, or structures of any kind not used or intended for use as a farm plant or a farm residence," we are aware that a modern farming operation may be invested with many of the hallmarks of an industrial plant. In *Unemployment Compensation Division of Workmen's Comp. Div., Etc. v. Valker's Greenhouses,* 70 N.D. 515, 296 N.W. 143 (1941), we quoted with approval from *Park Floral Company v. Industrial Commission,* 104 Colo. 350, 91 P.2d 492 (1939):

" 'By the evolutionary processes attendant on our present-day business methods, many activities formerly embraced in farming operations or in intimate connection therewith have become specialized and removed from the farm, and when this is accomplished such work may properly be regarded as thereby becoming industrial in nature, rather than agricultural in the common conception of that term.' "

When the characteristics of an industrial operation predominate over the farm characteristics, we can no longer call the operation a farm. See *Boehm v. Burleigh County,* 130 N.W.2d 170, 175 (N.D.1964). This is consistent with an earlier case where this Court concluded that a greenhouse enterprise which relied upon artificial conditions to the extent of approximately fifty percent

---

4. The Supreme Court of the United States, in *Asbury Hospital v. Cass County,* 326 U.S. 207, 66 S.Ct. 61, 90 L.Ed. 6 (1945), affirmed this Court's statements found in *Asbury Hospital v. Cass County,* 72 N.D. 359, 7 N.W.2d 438, 454– 455 (1943), and reiterated in *Asbury Hospital v. Cass County,* 73 N.D. 469, 16 N.W.2d 523, 525 (1944), that the requirements of due process were fulfilled by the statutory requirement of an action and judgment to effect the escheat.

of its activities was not a farm. *Unemployment Compensation Division of Workmen's Comp. Div., Etc. v. Valker's Greenhouses, supra,* 70 N.D. 515, 296 N.W. at 146. The previous efforts of this Court to determine the meaning of the term "farm" have resulted in a host of definitions,[5] all of which clearly demonstrate the ordinary meaning of the word while nonetheless leaving room for doubt when applied to a given set of circumstances. The definition now contained in § 57–02–08(15), NDCC:

". . . the term 'farm' means a single tract or contiguous tracts of agricultural land containing a minimum of ten acres and which normally provides a farmer, who is actually farming the land or engaged in the raising of livestock or other similar operations normally associated with farming and ranching, with not less than fifty percent of his annual net income,"

is largely intended to exclude hobby farms and rural residences from the exemption.

5. *Fredrickson v. Burleigh County,* 139 N.W.2d 250 (N.D.1965), contains the following at 253:
"The word 'farm' has had many and varied meanings ascribed to it down through the years. Webster's Third New International Dictionary defines the word 'farm' as:
" 'Any tract of land whether consisting of one or more parcels devoted to agricultural purposes generally under the management of a tenant or the owner; any parcel or group of parcels of land cultivated as a unit.'
"Funk and Wagnalls New Standard Dictionary says a 'farm' is:
" 'A tract of land under one control or forming a single property devoted to agriculture, stock-raising, dairy-produce, or some allied industry.'
"From 35 C.J.S. Farm page 948:
" 'The word "farm" is defined as meaning a body of land, usually under one ownership, devoted to agriculture, either to the raising of crops, or pasture, or both; a considerable tract of land, cultivated or used in some one of the usually recognized ways of farming; an indefinite quantity of land, some of which is cultivated, whether it is large or small, isolated, or made up of many parcels, for a farm may be of any size, of any shape, of any boundaries, and may include less than one lot, or comprise several lots or parts of lots.
" 'The term is further defined to mean a tract of land devoted to agricultural purposes, generally under the management of a tenant or owner; a tract of land devoted to agriculture, stock raising, or some allied in-

It is of no help in drawing a line between farm buildings and industrial plants. Likewise of no help and largely for the same reasons is the following:

"57–02–01. Definitions.—As used in this title, unless the context or subject matter otherwise requires:

.    .    .    .    .

"10. There shall be a presumption that a unit of land is not a farm unless such unit contains a minimum of ten acres, and the taxing authority, in determining whether such presumption shall apply, shall consider such things as the present use, the adaptability to use, and how similar type properties in the immediate area are classified for tax purposes."

■ From these definitions we find that, to come within the exemption provided in § 57–02–08(15), NDCC, the enterprise must, at a minimum, have the following: (1) a single tract or contiguous tracts of agricul-

dustry; a parcel or tract of land consisting usually of grassland, meadow, pasture, tillage, and woodland, cultivated by one man, and usually owned by him in fee; any parcel or group of parcels of land cultivated as a unit; one or more tracts of land devoted to agricultural purposes including the production of crops and the raising of domestic and other animals; a tract of land used for raising crops or rearing animals; * * *.'
*   *   *   *   *   *
" 'The word has a suggestive significance apart from any explicit or restrictive meaning, and even in a popular sense is applied to land used for any one of a variety of purposes, and it is generally recognized that the term includes land and buildings, the real estate devoted to agricultural purposes, raising of cattle, dairying, and the like, and may and often does include not only cultivated land and pasture land, but also woodland.'
"As we said in the *Boehm* case, supra:
" 'The definitions set forth above clearly demonstrate to us the ordinary meaning of the word. As ordinarily understood, we believe "farm," for tax-exemption purposes, may be defined as a rural tract or plot of ground with buildings and improvements devoted to agricultural purposes and implies the cultivation of the land under natural conditions for the purposes of production or use in aid thereof * * *.' "

tural land containing a minimum of ten acres, (2) devoted, at least in part, to cultivation, (3) which results in the raising and production of plant and animal life in an unprocessed state, (4) the fruits of which production normally contribute a substantial proportion of the net income of the beneficial owner of agricultural land, (5) with the buildings and structures situated on the land being those reasonable and conducive to the farming enterprise.

■ With these minimums in mind, placing on the claimant of the tax exemption the burden of establishing the exempt status of the property, and applying a strict construction against the claimant, we proceed to examine the facts. See *North Dakota Soc. of Crippled Child. & Ad. v. Murphy,* 94 N.W.2d 343, 345 (N.D.1959), and *Lutheran Camp. Coun. v. Board of Co. Com'rs, Ward Co.,* 174 N.W.2d 362 (N.D. 1970).

## FACTS

Butts owns a 296-acre tract of agricultural land in Foster County. Located on that land are a farm residence (occupied by members of the Lloyd Butts family who are shareholders in Butts), and other structures consisting of quonsets, grain storage facilities, and feeder pens. In 1971 (the first year in which the exemption is claimed), the pens took up approximately 40 acres, while in 1972 the pens were expanded to include approximately 65 acres. The other structures occupy approximately seven acres. In 1971, 157.8 acres of the tract were cropped and, in 1972, 119.3 acres were cropped. For the most part the crops were cut for forage and fed to cattle maintained in the pens.

Approximately eighteen percent of the total forage fed to the cattle came from the cropped portion of the tract and from another 320 acres which were leased by Butts. Eighty-two percent of the forage and nearly one hundred percent of other feeds were purchased from outside sources. Some grain was produced on the small portion of the 296-acre tract not devoted to structures or forage, but the amount is scant compared to some $700,000 worth of feed grain

purchased in 1972 from non-family outside sources and "substantial" amounts of grain produced by family outside sources.

This forage and grain was fed, in 1971, to approximately 450 head of breeding heifers, the ownership of which was divided, in unspecified proportions, between Butts and others, and to feeder cattle numbering from a low of 1,500 to a high of 6,000 head, with from 50% to 60% being owned by Butts. In 1972 approximately 250 breeding heifers, again with the ownership divided in unspecified proportions between Butts and others, and feeder cattle numbering from a low of 1,500 to a high of 7,800 head, with from 50% to 60% being owned by Butts, all were housed and fed in the pens.

The pens, as they existed in 1972, had a capability of housing approximately 10,000 head of cattle.

## DECISION

From the above facts it is easily determined that (1) only a small percentage of the feed used is actually produced by Butts, (2) only a small percentage of the cattle are actually produced by Butts, the greater number being purchased for feeding, and (3) slightly over half of the cattle fed are actually owned by Butts, with 40% to 50% being owned by others and fed on contract or by some other arrangement.

■ While the ownership of the cattle is not always determinative, we hold that the contract feeding of non-owned cattle, in a feed lot, is an enterprise of an industrial nature. While the fattening of cattle may generally be considered an agricultural activity, "by the evolutionary processes attendant on our present-day business methods, many activities formerly embraced in farming operations . . . have become specialized and removed from the farm, and when this is accomplished such work may properly be regarded as thereby becoming industrial in nature." *Park Floral Company v. Industrial Commission,* 91 P.2d at 495, *supra.*

We have thus determined that nearly one-half of the activities of Butts are industrial in nature. That rationale does not apply to those cattle owned by Butts, but another rationale does.

All the cattle, however owned and whether kept as feeders or breeders, are fed largely on purchased feed. The fact that the feed is purchased rather than grown by Butts makes the operation more one of processing than of farming. As we earlier stated, farming is production, not processing.

Most of the feed is purchased rather than grown, and most of the cattle are purchased rather than produced in the feed lot. Taking the year most favorable to Butts, 1971, there were never more than 450 breeding heifers, however owned, present in the lot. The production of these heifers could not have amounted to any significant percentage of the feeder cattle production, either in 1971 or 1972.

What Butts actually accomplishes in its enterprise is the fattening of cattle, about half of which are owned by Butts and nearly half of which are owned by others, but fed on contract with feed which is nearly all purchased from outside sources. This is not farming; it is the operation of a beef factory. The industrial nature of the operation clearly predominates over the farm nature. We therefore hold that Butts is conducting a non-farming business operation and that it has failed to meet its burden of showing the exempt status of the buildings and structures in question.

The judgment of the district court is affirmed.

ERICKSTAD, C. J., and PAULSON, VOGEL and MUGGLI, JJ., concur.

The Honorable PAUL M. SAND, deeming himself disqualified, did not participate; the Honorable NORBERT J. MUGGLI, District Judge of the Sixth Judicial District, sitting in his place.